Henry WINER, Appellee,

v.

EDISON BROTHERS STORES PENSION PLAN, Appellant.

Ray MARSHALL, Secretary of the United States Department of Labor, Appellee,

v.

EDISON BROTHERS STORES PENSION PLAN, Eric P. Newman, Julian I. Edison, Bernard Edison, Lewis Pate, Sam Alton, Walter Heinecke, Andrew Newman and Louis Melchior, Appellants.

Nos. 78–1327, 78–1328.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1978.

Decided Feb. 21, 1979.

Rehearing and Rehearing En Banc Denied March 15, 1979.

---

308

Myron Gollub of Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., argued, Alan B. Hoffman, St. Louis, Mo., on brief, for appellant.

Merle Silverstein of Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, Mo., argued, Theodore F. Schwartz, Clayton, Mo., and Stanley M. Rosenblum and Steven J. Stogel of Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, Mo., on brief, for appellee Henry Winer.

Samuel W. Halpern, Atty., U. S. Dept. of Labor, Washington, D. C., argued, Carin Ann Clauss, Sol. of Labor, Monica Gallagher, Ass'n Sol., and Norman P. Goldberg, Counsel for Litigation, on brief, for appellee, Dept. of Labor.

Before LAY and HEANEY, Circuit Judges, and HANSON,* Senior District Judge.

HEANEY, Circuit Judge.

Edison Brothers Stores Pension Plan and the individual members of the Plan's Retirement Committee appeal from a decision of the District Court denying their motion for summary judgment and granting the motion for summary judgment of

---

* WILLIAM C. HANSON, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

Henry Winer and the Secretary of Labor.[1] The appellants argue that the District Court erred in determining that Winer and Joseph M. Fingerhut were entitled to receive pension benefits notwithstanding the Committee's finding that they had violated the Plan's "bad boy" clause. We affirm.

Henry Winer and Joseph M. Fingerhut were terminated from employment for Edison Brothers Stores, Inc., on May 10, 1976, because Edison believed, after making independent investigations, that both had received kickbacks from suppliers doing business with Edison. Edison proceeded to file suit against Fingerhut and Winer, seeking recovery for damages caused by their dishonest conduct.[2]

Fingerhut and Winer made written requests for payment of pension benefits in June, 1976.[3] Edison had adopted a pension plan on January 1, 1944. The plan was subsequently revised effective January 1, 1966.[4] It contained what is commonly referred to as a "bad boy" clause. Section 4.09, the "bad boy" clause, provided:

> A Member and his spouse shall be disqualified from receiving any pension or other benefits under this Plan or the Prior Plan if at the time of the retirement or termination of employment of such Member he had been dishonest with respect to the assets of or in transactions on behalf of any of the Corporations or if the Member is convicted of a felony occurring while an Employee of any of the Corporations.[5]

On July 13, 1976, the Retirement Committee denied their requests. In letters to Fingerhut and Winer, it stated:

[E]vidence has been submitted to us which led us to conclude that your conduct has been such as to disqualify you under Section 4.09. By operation of the aforesaid Section 4.09, which is mandatory by its terms, we feel that you previously forfeited your pension rights before any recent changes in the law were intended to be effective. We have concluded that your aforesaid conduct extended over a period of years, was material, and was concealed from the corporation by you.

Under the pension plan provisions, the Retirement Committee has the responsibility for determining eligibility for benefits. Pursuant to § 503 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1133, and provisions of the plan, Fingerhut and Winer each filed a written application for a hearing before the Retirement Committee.

On October 28, 1976, the Retirement Committee held a hearing to review the denial of Fingerhut's benefits. Counsel for the Retirement Committee introduced evidence implicating Fingerhut in a series of kickbacks. The evidence consisted largely of documents from manufacturers, vendors and sales representatives and included affidavits, signed statements and a deposition. It also consisted of testimony of Julian Edison, the chairman of the board of Edison, concerning his interview with Fingerhut immediately prior to Fingerhut's discharge. During the interview, Fingerhut admitted receiving payments from various suppliers.

---

1. The decision of the District Court is reported at 447 F.Supp. 836 (E.D.Mo.1978).

2. The actions are presently pending in the Missouri state courts.

3. At the time of their discharge, Winer and Fingerhut had worked for Edison Brothers for thirty-three years two months and thirty-eight years eight months, respectively.

4. Pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., the plan was further amended on June 1, 1977, to be retroactively effective to January 1, 1976.

5. The plan, as amended effective January 1, 1976, contains an analogous provision. Section 7.05 of the amended plan provides in part:

> Subject to the divestiture limitations imposed by the then applicable law, a Member's right to his Vested Accrued monthly pension, or of an Eligible Spouse's right related to such pension, shall be divested if, at the time of retirement or termination of employment, the Member is found to have committed dishonest acts with respect to assets of or transactions on behalf of the Corporations. Otherwise there shall be no divestiture of rights to such pension for cause. (Emphasis added.)

He estimated that these payments had recently amounted to $2,000 to $3,000 annually. Some payments had been made each year for a period of twenty years. Fingerhut also admitted that his son and daughter had received payments in excess of $2,000 each. Fingerhut presented no evidence to contradict the Committee's evidence.

On December 21, 1976, the Retirement Committee affirmed its decision to deny Fingerhut's pension. It concluded that Fingerhut did receive kickbacks and that such conduct constituted dishonesty under § 4.09 of the pension plan.

Winer's hearing before the Retirement Committee was held on December 21, 1976. Documentary evidence was introduced showing that various suppliers had made kickbacks to Winer. Winer testified that he had taken some vacation trips to Saint Maarten and Acapulco with a supplier and had received other payments amounting to $3,000 or $4,000.

The Retirement Committee affirmed its decision denying Winer's pension on March 4, 1977. It found that Winer did receive improper payments and that such conduct constituted dishonesty under § 4.09 of the pension plan.[6]

Winer filed suit on March 24, 1977, against the Plan for recovery of pension benefits. The Secretary of Labor filed suit on August 17, 1977, against the Plan and the individual members of the Retirement Committee. The Secretary alleged that the Retirement Committee had caused the Plan to deny Winer and Fingerhut pension benefits to which they were entitled in violation of ERISA §§ 404(a)(1)(B) and (D) and 405(a), 29 U.S.C. §§ 1104(a)(1)(B) and (D), 1105(a). He sought an order enjoining the Retirement Committee from further violations and requiring the Plan to pay Winer and Fingerhut their benefits. Both actions were brought pursuant to ERISA § 502, 29 U.S.C. § 1132. The District Court consolidated the actions on October 4, 1977.

The District Court entered an order on March 14, 1978, granting the Secretary and Winer summary judgment. The court determined that the date of Winer's and Fingerhut's misconduct had no relevance to the denial of their benefits. It was only when they were discharged on May 10, 1976, that a pension claim arose. This was subsequent to the effective date of ERISA § 203(a), 29 U.S.C. § 1053(a), which provides that vested pension benefits cannot be divested except in some limited situations not applicable to the action. Consequently, the Retirement Committee could not lawfully apply § 4.09. The order required the Plan to begin paying Winer and Fingerhut current benefits and to agree with Winer on the amount of his back payments, interest and attorney's fees. The District Court entered a further order on March 27, 1978, awarding Winer $23,258.97, plus interest at six percent per annum from March 15, 1978. An award of attorney's fees was stayed pending appeal.[7]

A primary concern of Congress in enacting ERISA was to provide employees with vested rights in pension plans.[8] ERISA § 2, 29 U.S.C. § 1001, provides in part:

(a) The Congress finds that * * * many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans[.]

* * * * * *

(c) It is hereby * * * declared to be the policy of this Act to protect * * the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service[.]

6. The Secretary, the Plan and the Retirement Committee entered into a stipulation which accepted as true the Committee's findings of fact with respect to Winer's and Fingerhut's conduct. For the purpose of this appeal, we also assume that Winer and Fingerhut received improper payments.

7. The appellants have not appealed from the award of interest on the back payments or the payment of attorney's fees to Winer's counsel.

8. Vesting refers to the nonforfeitable right to pension benefits which an employee acquires. See ERISA § 203, 29 U.S.C. § 1053.

*See, e. g.,* H.R.Rep.No.93–807, 93d Cong., 2d Sess. 3 (1974), *reprinted in* II *Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 94th Cong., 2d Sess., Legislative History of the Employee Retirement Income Security Act of 1974,* at 3123 (1976) [hereinafter cited as *Legislative History*]; H.R.Rep.No.93–533, 93d. Cong., 1st Sess. 5–6 (1973), *reprinted in* II *Legislative History,* 2352–2353; S.Rep.No.93–383, 93d Cong., 1st Sess. 3 (1973), *reprinted in* I *Legislative History,* 1071; S.Rep.No.93–127, 93d Cong., 1st Sess. 8–9 (1973), *reprinted in* I *Legislative History,* 594–595. To effectuate this policy, Congress adopted ERISA § 203(a), 29 U.S.C. § 1053(a), which prescribes minimum vesting standards and sharply limits the situations in which vested rights can be divested.[9] Section 203(a) provides, in relevant part, that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age * * * ".

Prior to the enactment of ERISA, pension plans frequently contained "bad boy" clauses which denied employees their otherwise nonforfeitable pension benefits if they were discharged for dishonesty, excessive absenteeism or insubordination, or if they competed with their former employer after termination. Lee, *ERISA's "Bad Boy": Forfeiture for Cause in Retirement Plans,* 9 Loy.Chi.L.J. 137 (1977). The legislative history is clear, however, that § 203(a) was designed, in part, to prevent further enforcement of "bad boy" clauses. In February, 1974, the House Committee on Ways and Means, in discussing permitted forfeitures of vested rights, stated:

> With the limited exceptions noted above [referring to the situations discussed in note 9, *supra*], no rights, once they are required to be vested, may be lost by the employee under any circumstances. * * * For example, a vested benefit is not to be forfeited because the employee later went to work for a com-

petitor, or in some other way was considered "disloyal" to the employer.

H.R.Rep.No.93–807, 93d Cong., 2d Sess. 60 (1974), *reprinted in* II *Legislative History,* 3180 (footnote omitted). *Accord,* H.R.Rep. No.93–779, 93d Cong., 2d Sess. 59 (1974), *reprinted in* II *Legislative History,* 2648; S.Rep.No.93–383, 93d Cong., 1st Sess. 50 (1973), *reprinted in* I *Legislative History,* 1118, U.S.Code Cong. & Admin.News 1974, pp. 4639, 4725. Congressman Dent, Chairman of the General Subcommittee on Labor of the House Committee on Education and Labor and one of the principal supporters of ERISA, summarized the status of "bad boy" clauses during the floor debates as follows:

> Another issue dealt with in the conference report is the policy against what has been described as "bad boy" clauses. While firmly articulating this policy, the conferees expressly provided * * * that a plan be permitted to suspend benefits under certain circumstances.

120 Cong.Rec. 29197 (1974), *reprinted in* III *Legislative History,* 4669.

The Conference Report states:

> Under the conference substitute, except as outlined below [referring to the situations discussed in note 9, *supra*], an employee's rights, once vested, are not to be forfeitable for any reason.

H.R.Conf.Rep.No.93–1280, 93d Cong., 2d Sess. 271 (1974), *reprinted in* III *Legislative History,* 4538, U.S.Code Cong. & Admin. News, 1974, p. 5052.

Since ERISA became effective with respect to the Plan on January 1, 1976, *see* ERISA § 211(b)(2), 29 U.S.C. § 1061(b)(2), it follows that the Retirement Committee could not thereafter enforce the Plan's "bad boy" clause without violating their statutory obligations. *See Amory v. Boyden Associates,* 434 F.Supp. 671, 672 (S.D.N.Y.1976); *Keller v. Graphic Systems of Akron, Inc.,* 422 F.Supp. 1005, 1009 (N.D.Ohio 1976).

---

**9.** The limited exceptions are connected with death of the employee, suspension of benefits upon particular types of reemployment, certain plan amendments approved by the Secretary of Labor, and the withdrawal of benefits derived from employee contributions. *See* ERISA § 203(a)(3), 29 U.S.C. § 1053(a)(3).

The appellants raise several arguments in an attempt to show that they did not violate ERISA when they utilized § 4.09 to deny Winer and Fingerhut pension benefits. They argue, initially, that Winer and Fingerhut had no vested rights to which § 203(a) could apply. Their argument may be summarized as follows: The Retirement Committee has full authority under the pension plan to determine the eligibility of participants for benefits. It found that Winer and Fingerhut had engaged in dishonest conduct for a period of years prior to January 1, 1976, and had, by their conduct, disqualified themselves from any pension rights as of the time of their misconduct. It concluded that ERISA does not alter the Retirement Committee's ability to interpret and apply the terms of the pension plan and, consequently, its interpretation of § 4.09 is binding on the courts because it was made rationally and in good faith. Since Winer and Fingerhut were disqualified by the terms of the plan from receiving pensions before January 1, 1976, the effective date of § 203(a), they had no pension rights which could have become vested as of that date.[10]

This argument is defective for several reasons. We note, initially, that our function on appeal is not limited to determining whether or not the Retirement Committee acted rationally and in good faith. Assuming that the rational and good faith standard is applicable under ERISA for judicial review of the Retirement Committee's interpretation of plan provisions in some circumstances, see *Bueneman v. Central States, Southeast & Southwest,* 572 F.2d 1208 (8th Cir. 1978), it does not apply where its interpretation is ultimately an interpretation of a statutory provision. *See Riley v. MEBA Pension Trust,* 570 F.2d 406, 409–410 (2d Cir. 1977). The Committee's interpreta-

tion of § 4.09 has precisely this result. In effect, the Committee is deciding that § 203(a) does not, under these circumstances, preclude application of the "bad boy" clause. Determining the scope of § 203(a) is, however, a task assigned to the courts. Thus, our responsibility on appeal is to decide whether the Committee's application of § 4.09 is consistent with § 203(a) and the other provisions of ERISA.

■ The thrust of the appellants' argument is that there was no forfeiture of vested rights after January 1, 1976, because the rights of Winer and Fingerhut were forfeited "automatically" by the plan terms at the time of their misconduct prior to January 1, 1976. We find little merit to this contention. A forfeiture does not occur immediately by the self-executing operation of a plan provision at the time of an employee's misconduct. Rather, a forfeiture occurs when a pension committee declares the forfeiture by denying the employee's pension claim.[11] *Morgan v. Laborers Pension Trust Fund for N. Cal.,* 433 F.Supp. 518, 522 n. 5 (N.D.Cal.1977).

Automatic forfeitures would place intolerable burdens on employees. They would be required to constantly oversee operations of pension committees in order to protect themselves against abuses and errors that could pass unnoticed. Otherwise, they would risk losing their cause of action years before they applied for pension benefits. *See id.* This is inconsistent with the remedial purposes of ERISA. Moreover, such a rule would allow pension committees to "bootstrap" themselves into positions where they could rely indefinitely on pre-ERISA conduct to deny pension benefits to employees based on provisions clearly prohibited by ERISA.[12] Thus, the Retirement Commit-

---

10. The appellants concede that § 4.09 could not be applied to misconduct occurring subsequent to January 1, 1976.

11. The District Court determined that the claim arose when Winer and Fingerhut were discharged. 447 F.Supp. at 837. We decline to follow the District Court in this regard. *Contra, Fremont v. McGraw-Edison Co.,* 460 F.Supp. 599 (N.D.Ill.1978).

12. The appellants rely on *Riley v. MEBA Pension Trust,* 570 F.2d 406 (2d Cir. 1977), for the proposition that pension benefits which accrued prior to January 1, 1976, are subject to all of the then effective plan terms, including forfeiture provisions. *Riley,* however, does not support this position. The case does not, as the appellants suggest, turn on the date of the employees' misconduct, which occurred prior

tee's decisions to deny Winer and Fingerhut pension benefits constituted prohibited forfeitures of vested rights.

The appellants argue next that § 203(a) may not be retroactively applied to invalidate § 4.09 as it governed pre-ERISA facts. We fail to see how the statute is being applied retroactively. There is no attempt to hold the appellants liable for any of their actions occurring prior to the statute's effective date which would constitute retroactive application. *See Morgan v. Laborers Pension Trust Fund for N. Cal., supra* at 523–524; *Martin v. Bankers Trust Co.,* 417 F.Supp. 923, 925 (W.D.Va.1976), *aff'd,* 565 F.2d 1276 (4th Cir. 1977). The appellants are liable only for actions that transpired subsequent to January 1, 1976.

■ The appellants finally argue that even if there was a forfeiture of vested rights under § 203(a), § 4.09 is enforceable pursuant to ERISA § 514(b)(1), 29 U.S.C. § 1144(b)(1), as an "act or omission" occurring before January 1, 1975. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that as of January 1, 1975, the provisions of Title I, including the nonforfeiture rules of § 203(a) shall supersede any and all state laws relating to employee benefit plans. Section 514(b)(1), however, provides that "[t]his section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." The appellants contend that the dishonest conduct of Winer and Fingerhut prior to January 1, 1975, constitutes "acts" or "omissions" under § 514(b)(1). Thus, the Retirement Committee's application of § 4.09 is required by § 514(b)(1) to be governed by state law which permits enforcement rather than by § 203(a).[13]

The legislative history behind the phrase "act or omission" is sparse. In discussing § 514, for example, the Conference Committee stated:

The preemption provision will take effect on January 1, 1975[.] * * * However, it will not affect any causes of action that have arisen before January 1, 1975, and it will not affect any act or omission which occurred before that date. H.R.Conf.Rep.No.93–1280, 93d Cong., 2d Sess. 383 (1974), *reprinted in* III *Legislative History,* 4650, U.S.Code Cong. & Admin. News 1974, p. 5162. As noted by the District Court in *Bacon v. Wong,* 445 F.Supp. 1189, 1192 (N.D.Cal.1978), " * * * it is not at all clear what acts and omissions Congress referred to in § 514(b)(1) * *."

Congress could not have meant that if any act or omission relevant to the cause of action occurred prior to January 1, 1975, state law would control. Such an interpretation would be inimical to the Congressional attempt to extend the protections of ERISA to all employees as soon as practicable. The phrase "act or omission" in § 514(b)(1) apparently refers to those significant facts which give rise to a claim but which fall short of establishing a cause of action. *See Reuther v. Trustees of Trucking Emp.,* 575 F.2d 1074 (3d Cir. 1978); *Bacon v. Wong, supra*; *Finn v. Chicago Newspaper Publishers' Association,* 432 F.Supp. 1178 (N.D. Ill.1977). In other words:

that clause was apparently intended to permit courts to apply state law, even if the cause of action accrued after January 1, 1975, in cases where that result most fairly accommodates the interests of all affected parties—the beneficiaries, participants, and fiduciaries of and contributors to ERISA trusts. Courts must try to phase ERISA in as rapidly as possible without judging the conduct of affected persons by standards different from those which applied when they acted.

*Bacon v. Wong, supra* at 1192.

Under this construction, the wrongful conduct of Winer and Fingerhut cannot be

---

to January 1, 1976. The case turned on the date of the pension committee's conduct, that is, whether their actions took place before or after January 1, 1976. *Riley* holds only that a pension committee may validly apply a forfei-

ture clause if the pension committee applied it prior to January 1, 1976.

**13.** We assume that § 4.09 is valid and enforceable under state law.

considered an "act or omission." As we have previously discussed, the critical fact in this action is the Retirement Committee's denial of benefits based on the "bad boy" clause. At the time of the dishonest conduct, no event occurred that could have served as a basis for a claim.

The cases cited by the appellants to support their position are clearly distinguishable in this regard. In *Reuther v. Trustees of Trucking Emp., supra,* and *Bacon v. Wong, supra,* the employers made contributions to pension funds on behalf of employees who were ineligible for benefits. They later sought restitution for these contributions. The courts determined that the relevant "acts or omissions" were the overpayments themselves and, thus, ERISA did not govern an employer's right to restitution for payments made to the funds prior to January 1, 1975. The decisions of the pension committees to deny payment were considered merely a requirement of exhaustion of private remedies, however, rather than the underlying basis for the claim as in the present action. *See Bacon v. Wong, supra* at 1192–1193.

We note, moreover, that to construe the dishonest conduct of Winer and Fingerhut as an "act or omission" under § 514(b)(1) would seriously undercut the Congressional decision to prevent further enforcement of "bad boy" clauses.

We conclude that the Retirement Committee violated their fiduciary duties under ERISA when they refused to pay the pension benefits of Winer and Fingerhut.

The judgment of the District Court is affirmed.