Wayne W. SHATTO; John S. Pemberton;
and Alvin B. Swigert,
Plaintiffs-Appellants,

v.

EVANS PRODUCTS COMPANY, et al.,
Defendants-Appellees.

No. 83-3826.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1983.

Decided March 19, 1984.

Barry Slevin, Robert DeAraujo, Seifman, Semo & Slevin, Washington, D.C., for plaintiffs-appellants.

Sherman V. Lohn, Garlington, Lohn & Robinson, Missoula, Mont., Michael Ossip, Steven Spencer, Morgan, Lewis & Bockius, William J. Taylor, Taylor & Taylor, Philadelphia, Pa., for defendants-appellees.

Before ANDERSON, FLETCHER, and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

In 1965, the Van-Evan Company adopted the Van-Evan Hourly Rated Employees Retirement Income Plan. Van-Evan, but not the employees, contributed to the plan's trust fund to provide pension benefits to employees. The plan was amended in 1969.

In 1970, Local 198 of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers became the exclusive bargaining representative for all of Van-Evan's hourly employees. Plaintiffs were union members. In February, 1971, Van-Evan and the Union negotiated a collective bargaining agreement which incorporated the Van-Evan plan. Van-Evan was liquidated into Evans Products Company in 1971.

In 1972, Evans Products and the union entered into a second collective bargaining agreement. This agreement provided that Evans Products would participate in the Paper Industry Union-Management Pension Fund on behalf of the employees. The agreement became effective on October 1, 1972. Neither the 1972 collective bargaining agreement nor subsequent agreements have referred to the Van-Evan plan.

Evans Products ceased contributing to the Van-Evan plan on September 15, 1972. On September 15, 1976, the Board of Directors adopted a resolution which provided that the Paper Industry plan had been substituted for the Van-Evan plan and that all obligations under the Van-Evan plan had been extinguished. In April, 1978, the Trustee of the Van-Evan plan transferred to Evans Products the trust fund contributions of approximately $200,000.

Shatto was hired by Van-Evan in 1965. Pemberton was hired in 1972. Both were employed until mid-1980, when Evans Products closed its Missoula plant.

Shatto and Pemberton claim that Evans Products breached its contractual and fiduciary duties by seizing assets from the plan. Plaintiffs contend that they were entitled to the assets remaining in the trust when it terminated and that Evans Products wrongfully deprived them of their right to those assets. The district court granted summary judgment for Evans Products. We reverse and remand.

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing summary judgment, the district court finds that there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review de novo. *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983).

## I. *Application of ERISA*

Plaintiffs argue that Evans Products' recovery of the assets violated the requirements of the Employee Retirement Income Security Act. The district court found that ERISA was inapplicable because the Van-Evan plan had been terminated "in substance" prior to ERISA's passage. We disagree.

▪ ERISA's state law preemption provision provides that ERISA "shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). Congress did not intend for ERISA to apply retroactively. *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 657 (9th Cir.1981). In deciding whether ERISA applies, we must determine whether "the acts after the preemption date were merely formalities adjunct to a set of acts before the preemption date which were more substantially related to the cause of action." *Lafferty v. Solar Turbines Int'l,* 666 F.2d 408, 410 (9th Cir.1982).

▪ Some acts relating to plaintiffs' cause of action occurred before January 1, 1975. The 1971 collective bargaining agreement provided that the Van-Evan plan would be retained as the exclusive pension plan. The second collective bargaining agreement provided that Evans Products would participate in the Paper Industry plan. Evans Products ceased contributing to the Van-Evan plan in September 1972. The Paper Industry plan became effective, according to the September 15, 1976 Board of Directors' resolution, on October 1, 1972. This evidence suggests that the 1976 resolution and subsequent recapture of plan assets constituted "mere formalities." Other evidence suggests, however, that the parties intended that the Van-Evan plan remain in existence after January 1, 1975.

First, a letter from the District Director of the Internal Revenue Service indicates that the employees would not acquire rights under the Paper Industry plan until it had been in effect for three years. Second, a resolution adopted by the Board of Directors on April 20, 1976 states that the Van-Evan plan was to be continued after 1972 because some employees might not acquire comparable rights under the Paper Industry plan. The resolution would have allowed amendments to the Van-Evan plan so that benefits paid under it would be reduced by amounts paid under the Paper Industry plan. Five months later, the Board resolved to terminate the Van-Evan plan retroactive to September 30, 1972. Evans Products did not submit the earlier resolution to the IRS.

This evidence suggests that the Board intended to continue the Van-Evan plan until 1976. ERISA would therefore apply to the termination. The plaintiffs have presented evidence sufficient to create a material issue of fact as to whether the Van-Evan plan was terminated prior to January 1, 1975. We remand for the district court to determine the date on which the Van-Evan plan was terminated.

## II. *Substitution of Plans*

▪ Evans Products argues that it and the union intended that the Paper Industry plan replace the Van-Evan plan. Article 19 of the 1971 collective bargaining agreement retained the Van-Evan plan for the "life of this agreement." The 1972 collective bargaining agreement provided that Evans Products would participate in the Paper Industry plan. Evans Products ceased contributing to the Van-Evan plan on September 15, 1972, and the Paper Industry plan became effective two weeks later. The Van-Evan plan was not referred to in later bargaining agreements. Evans Products also contends that the oral agreement concerning employee Brown and the 1972 Pay Board application indicate that the parties intended for the Paper Industry plan to replace the Van-Evan plan. Finally, it argues, the parties would not have intended

for Evans Products to contribute simultaneously to two separate plans. *See Rothlein v. Armour & Co.*, 377 F.Supp. 506, 510 (W.D.Pa.1974).

■ Although Evans Products ceased contributing to the fund, it does not necessarily follow that the union agreed to immediately terminate the Van-Evan plan and replace it with the Paper Industry plan. The parties may have intended to continue the Van-Evan plan until all participants were eligible for comparable benefits under the Paper Industry plan. There is a material issue of fact on this question. Accordingly, we remand for the district court to determine whether the parties intended to substitute the Paper Industry plan for the Van-Evan plan.[1]

## III. *Union's Authority to Bind Employees*

■ Plaintiffs argue that the union had no authority to bargain away the employees' rights to the Van-Evan plan's assets. It is well established that a collective bargaining representative has no authority to bargain away vested rights without an employee's consent. *See e.g., Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). The question is whether plaintiffs had vested rights in the assets.

■ Article XIII of the Van-Evan plan gives employees the right to receive the assets of the trust only when the plan has been terminated and all of its obligations to retirees have been met. Until these events occurred, plaintiffs had only a contingent interest in the trust's assets and the union had the authority to bargain away their rights under Article XIII. *See Turner v. Local No. 302, International Brotherhood of Teamsters*, 604 F.2d 1219, 1225 (9th Cir. 1979).

## IV. *Satisfaction of Liabilities*

■ Plaintiffs claim that, under the distribution scheme established in Article XIII. B.1. of the Van-Evan plan, they are entitled to the plan assets remaining at termination. Paragraph 14 of the 1965 Van-Evan plan provides that the company could recover the trust assets only in the event

> that the liabilities of the Plan have been satisfied or provided for in full, and that there is an amount remaining in the Fund due to erroneous actuarial computations during the previous life of the trust, *within the meaning of the Regulations under Section 401 of the Internal Revenue Code* (emphasis supplied).

Paragraph 13 also expressly refers to the regulations under section 401. This language was employed so that the trust and plan would meet the tax qualification requirements of the Internal Revenue Code. Since the 1965 Van-Evan plan incorporates section 401 (26 U.S.C. § 401) and its regulations, Evans Products was required to comply with these requirements in the event the Van-Evan plan was terminated.

26 U.S.C. § 401(a) and 26 C.F.R. § 1.401–2(a) provide that qualified pension plan funds must not be used for purposes other than the exclusive benefit of the employees or their beneficiaries prior to the satisfaction of all liabilities. 26 C.F.R. § 1.401–2(b)(2) states that the "liabilities" that must be satisfied upon termination include both

---

1. In granting summary judgment on the question of substitution, the district court considered, *inter alia,* the 1971 and 1972 collective bargaining agreements, the 1972 oral agreement regarding Brown, and the 1972 application to the Pay Board. Relying on the parol evidence rule, plaintiffs assert that their rights to the assets are defined solely by the Van-Evan plan and that extrinsic evidence is inadmissible to prove that Evans Products and the union agreed to alter the plaintiffs' rights.

The parol evidence rule excludes evidence of prior or contemporaneous negotiations or agreements; it does not apply to subsequent agreements. CALAMARI & PERILLO, THE LAW OF CONTRACTS § 3–2 (1977). The Van-Evan plan commenced in 1965 and was amended in 1969. Since the other agreements and negotiations— the 1971 and 1972 collective bargaining agreements, the agreement regarding Brown, and the Pay Board application—all occurred after 1969, the parol evidence rule does not apply. *See Syufy Enterprises v. Northern Cal. State Ass'n of IATSE Locals*, 631 F.2d 124, 126 (9th Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

fixed and contingent liabilities. 26 C.F.R. § 1.401–2(b)(2) provides an example to illustrate the concept of contingent liabilities:

> [I]f 1000 employees are covered by a trust forming part of a pension plan, 300 of whom have satisfied all the requirements for a monthly pension, while the remaining 700 employees have not yet completed the required period of service, contingent obligations to such 700 employees have nevertheless arisen which constitute "liabilities" within the meaning of that term.

Thus, an employer has an obligation even to those employees who have not yet completed the required period of service.

We are unable to determine from the record whether Evans Products first satisfied its liabilities before recovering the assets. The district court concluded that the Paper Industry plan, "which did give credit for all the years of service covered by the Van-Evan plan," satisfied the obligations of the Van-Evan plan but the record suggests that the district court did not address the question of whether the Paper Industry plan satisfied Evans Products' contingent liabilities to plaintiffs within the meaning of 26 C.F.R. § 1.401–2. We must therefore remand for the district court to determine whether Evans Products satisfied its contingent liabilities to plaintiffs. In making this determination, the district court may consider whether Evans Products satisfied its obligations through the adoption of a "comparable plan." 26 C.F.R. § 1.401–6(b).[2]

Reversed and Remanded.

2. Evans Products contends that this issue has already been resolved by an Internal Revenue Service determination that the reversion of assets was permissible. This determination is not entitled to deference because it was based on limited information provided by Evans Products. *See Aronson v. Servus,* 566 F.Supp. 1545, 1555 (D.Mass.1983). Moreover, since Evans Products failed to notify the plan participants of its intention to seek a determination, the participants and the union were unable to supply the Internal Revenue Service with any additional evidence on the question.