CHESTER BABIARZ ET AL. *v.* HARTFORD
SPECIAL, INC., ET AL.
(2595)

DANNEHY, C.P.J., HULL and BORDEN, Js.

Argued April 10—decision released August 14, 1984

*Bruce G. MacDermid,* for the appellants-cross appellees (defendants).

*Robert F. McWeeny,* for the appellees and cross appellant (plaintiffs).

BORDEN, J. The plaintiffs are ninety-six employees of the defendant, Hartford Special, Inc.,[1] who are either retired or eligible to retire. The defendant adopted a plan of complete liquidation under which certain retirement benefits, consisting of life and health insurance coverage, would be terminated. The plaintiffs sued to enjoin the termination of those benefits and for damages, and obtained an ex parte attachment of real estate of the defendant in the amount of $1,000,000. Thereafter, the plaintiffs moved, pursuant to General Statutes § 52-278k,[2] to increase the amount of the attachment to $4,402,256.03 and to garnishee certain banks. The defendant moved, pursuant to General Statutes § 52-278e, to dissolve or, in the alternative, to reduce the attachment. After a hearing, the trial court granted the plaintiffs' motion and increased the amount of the attachment to $3,250,000 and denied the defend-

---

[1] There are also three individual defendants who are directors of the corporate defendant. Although this appeal purports to have been taken by all the defendants, the prejudgment remedy at issue in this case does not run against the individuals. Thus, their interests are not involved in this appeal, and we refer in this opinion to Hartford Special, Inc., as the defendant.

[2] The plaintiffs' motion recites that it was made pursuant to General Statutes § 52-278h, but that section simply provides in general terms that the provisions governing prejudgment remedies apply to an application for such a remedy at any time after the suit is brought. We read the plaintiffs' motion as a motion to modify the prejudgment remedy under General Statutes § 52-278k, which is the only section of the statutes providing for a motion to increase an attachment already in place.

ant's motion to dissolve, except that it granted that motion to the extent of eliminating the claim of one of the plaintiffs, George Palifka, from the attachment. The defendant appealed from the actions of the court in increasing the attachment and denying its motion to dissolve; and Palifka cross appealed from the action of the court in eliminating his claim from the security of the attachment.

I

We first consider the extent to which the actions of the trial court are appealable final judgments. The defendant's appeal is two-pronged. It appeals from the order increasing the plaintiffs' attachment from $1,000,000 to $3,250,000, and from the order denying its motion to dissolve the attachment.

The order increasing the attachment was issued in response to the plaintiffs' motion filed under General Statutes § 52-278k. See footnote 2, supra. The granting of a motion to increase an attachment under General Statutes § 52-278k is not an appealable final judgment because it is not within those orders listed as "final judgment[s] for purposes of appeal" under General Statutes § 52-278*l* (a). See *City National Bank* v. *Davis,* 181 Conn. 42, 45-46, 434 A.2d 310 (1980).[3] Thus, the defendant's appeal from the order granting the plaintiffs' motion to increase the attachment must be dismissed. Id.

The order denying the defendant's motion to dissolve the attachment, but at the same time granting it to the extent of eliminating Palifka's claim, is a final judgment

[3] It is true that General Statutes § 52-278*l* (a) (2) makes appealable an "order . . . granting . . . a motion to . . . modify a prejudgment remedy under section 52-278e . . . ." The plaintiffs' motion here was not such a motion, however, because General Statutes § 52-278e contemplates only a motion to modify filed by a defendant. *Common Condominium Assns., Inc.* v. *Common Associates,* 192 Conn. 150, 152-53, 470 A.2d 699 (1984).

for purposes of appeal. General Statutes § 52-278*l* (2); *Common Condominium Assns., Inc.* v. *Common Associates,* 192 Conn. 150, 152–53, 470 A.2d 699 (1984); *City National Bank* v. *Davis,* supra. Thus, the defendant's appeal from the denial of its motion to dissolve and Palifka's cross appeal from the granting of the motion to dissolve as to him are properly before us.

## II

The gist of the plaintiffs' complaint is that the defendant promised them life and health insurance coverage as retirement benefits and that, in reliance on and in consideration of those promises, they continued their employment with the defendant. The court found the following facts in support of its determination of probable cause to sustain the validity of the plaintiffs' claims. Of the plaintiffs, forty-four had worked for the defendant for more than thirty years and all but three had worked for the defendant for at least six years. All of the plaintiffs believed the defendant to be a good place to work. Although their wages were a bit low for the area, their benefit package was excellent, as a result of which all of the plaintiffs stayed with the defendant or returned to it after layoffs. In 1942, the defendant instituted a group retirement plan which consisted solely of a pension. In 1960, it improved the plan by providing continuation of major medical insurance coverage for retired employees. Subsequently, the defendant improved the plan further by adding Medicare reimbursement, partial payment of the premium for life insurance provided just prior to retirement, and certain CMS and Blue Cross medical insurance coverage for retirees and their spouses. Beginning in 1967, the pension program offered two options: a reduced pension amount for the joint lives of the retiree and his spouse; or a larger amount for the life of the retiree, but not less than ten years, with the remainder of the ten year payments going to a deceased retiree's sur-

viving spouse. Many retirees chose the second option because of the life insurance portion of the benefit package. The defendant had promised the plaintiffs that these life and health insurance benefits would continue for retirees. The defendant's normal retirement age for its employees was sixty-five. The defendant promised its employees that, upon their reaching that age and becoming eligible for Medicare, their Blue Cross would terminate and the defendant would reimburse them for the cost of Medicare. Although the pension program is fully funded, the life and health insurance program is unfunded. The cost of funding the life and health insurance program for the plaintiffs is $3,105,078.40. Until the defendant ceased operations in February, 1983, its management intended to continue the program for all retirees for their lifetimes. It now plans to terminate all retirement benefits for the plaintiffs except for the pension program. It has made a partial distribution of assets to its shareholders and plans to do the same with its remaining assets.

The court found that the defendant had created in the plaintiffs reasonable expectations of receiving the promised benefits, which expectations were entitled to protection. See, e.g., *Bird* v. *Connecticut Power Co.*, 144 Conn. 456, 463, 133 A.2d 894 (1957). Except with respect to Palifka, the court rejected the argument of the defendants that the claim of the plaintiffs was preempted by provisions of the federal Employee Retirement Income Security Act of 1974 (ERISA); 29 U.S.C. § 1001 et seq. The court concluded that Palifka's claim was preempted by ERISA.

## A

We first reiterate here the limited role of the trial court in deciding the motions before it, and our even more limited role in reviewing its actions. We do so because the parties have presented this appeal and

cross appeal as if our scope of review, at least with respect to the legal issues, is plenary, which it clearly is not.

It is true that in deciding prejudgment remedy motions the trial court "must evaluate the arguments and evidence produced by both parties"; *Augeri* v. *C. F. Wooding, Co.,* 173 Conn. 426, 429, 378 A.2d 538 (1977); and that the showing of a clear, factually and legally simple defense, such as infancy or the statute of limitations, may be enough to show a lack of probable cause for the validity of a plaintiff's claim. Id. That evaluation, however, falls far short of an authoritative determination of the merits of those arguments and that evidence, and does not require the trial court, in a case such as this, to make a full and final decision on such factually and legally complex issues as were raised by the defendant's claim under ERISA. In ruling on the defendant's motion to dissolve, the court was doing no more than "determin[ing] probable success by weighing probabilities." *Three S. Development Co.* v. *Santore,* 193 Conn. 174, 176, 474 A.2d 795 (1984). This process "does not demand that a belief be correct or more likely true than false." Id., 175. Such a proceeding "is not contemplated to be a full scale trial on the merits"; id.; it does not lead to a "final decision" in any sense; *Augeri* v. *C. F. Wooding Co.,* supra; and it vests the court "with broad discretion which is not to be overruled in the absence of clear error." *Three S. Development Co.* v. *Santore,* supra. Moreover, this circumscribed and limited weighing process applies not only to the factual but to the legal issues. *Augeri* v. *C. F. Wooding Co.,* supra.

Our role in reviewing the decision of a trial court on a prejudgment remedy motion is even more limited. It is "very circumscribed. It is not to duplicate the trial court's weighing process, but rather to determine whether its conclusion was reasonable. 'In the absence

of clear error, this court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses.' " *Three S. Development Co.* v. *Santore,* supra, 176. Thus, we do not decide whether the legal conclusions reached by the trial court were correct or erroneous. We review the legal conclusions of the trial court only to the limited extent of determining "whether its conclusion[s] [were] reasonable." Id. This can only mean that if review of the record indicates that the trial court reached legal conclusions which have a reasonable basis, those conclusions must stand, even though a plenary review of them might well yield a different result. Any more complete process would lead us into the trap of determining the ultimate correctness of legal conclusions which the trial court has decided are only *probably* correct, and doing so on the basis of facts which the trial court has decided are only *probably* true, but which it has not found to be proven by a preponderance of the evidence. See id.

### B

With this limited standard in mind, we turn to the defendant's claims of error on the appeal. We hold that the conclusion of the court had a reasonable basis and that the court did not commit clear error.

The defendant's principal argument is that the claims of the plaintiffs, which are based on the common law, are preempted by ERISA. The court concluded that except with respect to Palifka these claims come within an exception to ERISA's broad preemption clause. Without deciding whether the court was correct in this determination, we find that its conclusion is supported by a reasonable basis.

In view of our very limited scope of review, and the very limited use to which our decision on such a review can be put, even with respect to the legal claims in this particular case, it would serve little purpose to state at any length the propositions of law which can be seen as reasonably supporting the conclusion of the trial court. Suffice it to say that ERISA provides that its preemption clause; 29 U.S.C. § 1144 (a); "shall not apply with respect to any cause of action which arose, *or any act or omission which occurred,* before January 1, 1975." (Emphasis added.) 29 U.S.C. § 1144 (b) (1). The court found, in addition to the findings articulated above, that all the plaintiffs other than Palifka had either retired or had completed one full year of service before January 1, 1975, and that the hiring contract for all those plaintiffs included the retirement benefits claimed by the plaintiffs. On the basis of these facts, the court concluded that the claims of those plaintiffs were not preempted by ERISA because they are based on acts committed before January 1, 1975; namely, either their retirement with the benefits in place before that date, or the acquisition before that date of those benefits as part of their hiring contract.

We are aware of the broad language of the ERISA preemption clause and of the broad reach which it has been held to have. See, e.g., *Shaw* v. *Delta Air Lines, Inc.,* 463 U.S. 85, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983); *Lafferty* v. *Solar Turbines International,* 666 F.2d 408 (9th Cir. 1982); *Dependahl* v. *Falstaff Brewing Corporation,* 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968, 102 S. Ct. 512, 70 L. Ed. 2d 384 (1981); *Delta Air Lines, Inc.* v. *Kramarsky,* 650 F.2d 1287 (2d Cir. 1981); *Winer* v. *Edison Bros. Stores Pension Plan,* 593 F.2d 307 (8th Cir. 1979). We are also aware, as some commentators have critically noted, "that courts have often defined the scope of preemption more narrowly where preemption may create what appear

to be undesirable regulatory lacunae or supersede state law in fields traditionally left to state governance." Hutchinson Ifshin, "Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974," 46 U. Chi. L. Rev. 23, 24 (1978).

Whether a particular set of facts, relied on as a basis of a claim, comes within the exception to preemption for acts committed before January 1, 1975, is not a simple question. The defendant cites a number of cases which point strongly in the direction of preemption and away from the exception, on the basis of which it might well ultimately prevail. See, e.g., *Lafferty* v. *Solar Turbines International*, supra; *Winer* v. *Edison Bros. Stores Pension Plan*, supra; *Azzaro* v. *Harnett*, 414 F. Sup. 473 (S.D.N.Y. 1976), aff'd, 553 F.2d 93 (2d Cir.), cert. denied, 434 U.S. 824, 98 S. Ct. 71, 54 L. Ed. 2d 82 (1977).

There is other authority, however, which supplies a reasonable basis for the court's conclusion. "The phrase 'act or omission' in [29 U.S.C. § 1144 (b) (1)] apparently refers to those significant facts which give rise to a claim but which fall short of establishing a cause of action." *Winer* v. *Edison Bros. Stores Pension Plan*, supra, 313. When a course of conduct "on which a benefit plan's potential liability is based straddles the effective date of ERISA" the exception to preemption for an act committed before January 1, 1975, "was apparently intended to permit courts to apply state law, even if the cause of action accrued after January 1, 1975, in cases where that result most fairly accomodates the interests of all affected parties—the beneficiaries, participants and fiduciaries of and contributors to ERISA trusts." *Bacon* v. *Wong*, 445 F. Sup. 1189, 1192 (N.D. Cal. 1978); see also *Coward* v. *Colgate-Palmolive Co.*, 686 F.2d 1230 (7th Cir. 1982), cert. denied, 460 U.S. 1070, 103 S. Ct. 1526, 75 L. Ed. 2d 948 (1983); but see *Dependahl* v. *Falstaff Brewing Corporation*, supra;

*Shaw* v. *International Assn. of Machinists & Aerospace Workers Pension Plan,* 563 F. Sup. 653 (C.D. Cal. 1983). We cannot find clear error in the conclusion of the trial court.

The defendants also argue that there was not sufficient evidence upon which the court could find a contract embracing the retirement benefits claimed by the plaintiffs; that the court erred in admitting two computer-generated documents, in violation of the standards enunciated in *American Oil Co.* v. *Valenti,* 179 Conn. 349, 426 A.2d 305 (1979); and that there was insufficient evidence to support the court's finding that the plaintiffs were entitled to an attachment in the specific amount of $3,250,000. We disagree.

The hearing lasted over a period of five days, and generated numerous exhibits. There was sufficient evidence for the court to form "a *bona fide* belief in the existence of the facts essential under the law for the [plaintiffs'] action . . . ." (Emphasis in original.) *Three S. Development Co.* v. *Santore,* supra, 175. It was not necessary for the court to find that those facts were more likely true than false. Id. Our review of the record persuades us that the court was justified in finding, for prejudgment remedy purposes, a contract embracing the retirement benefits at issue here.

The computer-generated documents were printouts of the present cost of the health and life insurance coverage for the plaintiffs. There was evidence of the cost of purchasing comparable coverage for the plaintiffs and of the actuarial assumptions used in making the calculations. There was also evidence, from a witness "with some degree of computer expertise, who [had] sufficient knowledge to be examined and cross-examined about the functioning of the computer"; *American Oil Co.* v. *Valenti,* supra, 359; about the reliability of the computer program used to generate the

documents. "In light of our limited role on review of such matters"; *Three S. Development Co.* v. *Santore,* supra, 179; we find no clear error in the evidentiary rulings.

The court specifically found that the estimated present cost of the retirement benefits is $3,105,078.40; and ordered a prejudgment remedy in the amount of $3,250,000. Although the precise path to the figure of $3,105,078.40 does not appear in the memorandum of decision, the defendant did not move for further articulation. See *Pointina Beach Assn., Inc.* v. *Stella,* 1 Conn. App. 341, 471 A.2d 970 (1984). Moreover, the defendant conceded in oral argument that there was evidence that this figure represents the present cost of the health insurance only, and that there was also evidence of an additional 1.4 million dollars as the cost of the life insurance. The plaintiffs point to evidence introduced by them that the total cost of the health and life insurance is $4,402,256.03, and to evidence introduced by the defendant to the effect that the present cost of the health insurance for the plaintiffs is from 57 percent to 85 percent of the plaintiffs' figures. On either theory, we cannot find clear error in the ultimate figure of $3,250,000. If the $3,105,078.40 represents the cost of the health insurance only, the defendant cannot complain of the court's failure to add to it the cost of the life insurance. If that figure represents, instead, the total of $4,402,256.03 proposed by the plaintiff but discounted by the court by some percentage based on the defendant's evidence, the court was entitled to do so for prejudgment remedy purposes, in view of the general rule that damages need not be established with precision but only on the basis of evidence yielding a fair and reasonable estimate. *Spera* v. *Audiotape Corporation,* 1 Conn. App. 629, 633, 474 A.2d 481 (1984). In either event, the court was also entitled to estimate, as it apparently did, the amount

of prejudgment interest and thus arrive at a rounded off figure of $3,250,000 for the amount of the attachment securing the plaintiffs' potential judgment.

### III

We now turn to Palifka's argument on his cross appeal that the court erred in excluding his claim from the security of the attachment. We agree.

The effective date of ERISA's preemption clause is January 1, 1975. 29 U.S.C. § 1144 (a). The theory of the trial court supporting the prejudgment remedy for the plaintiffs other than Palifka is that their claims were not preempted by ERISA because before that date they had either retired with their benefits in place or had acquired retirement benefits by virtue of their hiring contract. That theory, as we have noted, supplies a reasonable basis for the court's award of the attachment. That theory must apply, however, to all who come within its terms, unless there is some other legal or factual basis for a different determination as to any individual plaintiff.

The court treated Palifka's claim differently from those of the other plaintiffs because he had not completed one full year of service before January 1, 1975. We see nothing in either ERISA or the evidence that supports such a distinction, nor does the defendant point to any such statutory provision or evidence. We emphasize that our previous conclusion that the court's theory concerning preemption is not clear error does not mean that it is correct or should serve as a guide for the ultimate decision in this case. We conclude, however, that absent some justification for the exclusion of Palifka on the basis of his having worked for the defendant for less than one year prior to January 1, 1975, it was clear error for the court to exclude him from the protection of the attachment.

It is clear, however, that the evidence from which the court arrived at the attachment figure of $3,250,000 was calculated by reference to all of the plaintiffs, including Palifka. It is not necessary, therefore, that the amount of the prejudgment remedy be increased to reflect Palifka's participation in it; nor does he request that that be done.

The appeal of the defendant from the granting of the plaintiffs' motion to increase the attachment is dismissed.

There is no error on the defendant's appeal from the denial of its motion to dissolve the attachment.

There is error on the cross appeal, the judgment granting the defendant's motion to dissolve the attachment as to the plaintiff George Palifka is set aside and the case is remanded with direction to render judgment denying the defendant's motion.

In this opinion the other judges concurred.