PETROLITE CORPORATION, et al., Appellants,

v.

James L. BARNHOUSE, Appellee.

No. 13–90–118–CV.

Court of Appeals of Texas, Corpus Christi.

April 11, 1991.

Rehearing Overruled May 9, 1991.

O.F. Jones, Victoria, Gregory B. Richards, Houston, for appellants.

James Cole, Frank H. Crain, Victoria, for appellee.

Before DORSEY, KENNEDY, and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

Appellee, James L. Barnhouse, brought suit against appellants, Petrolite Corporation Retirement Plan (Retirement Plan) and Petrolite Corporation (Petrolite), for fraud, breach of contract, breach of fiduciary duty, and failure to pay benefits in accordance with the terms of the Retirement Plan. A jury found in favor of appellee and awarded $80,000.00 in actual and exemplary damages against Petrolite. Appellee also recovered a declaratory judgment against the Retirement Plan ordering monthly payments of $177.94 beginning June 4, 1989, until appellee's death or other recognized event. Appellants raise twenty-one points of error challenging the trial court's judgment. We reverse the judgment of the trial court and render a take-nothing judgment for appellants.

In 1956, appellee began full-time employment with Petrolite. Thereafter, in 1959, appellee was approached by Mont Land, vice-president of operations for Petrolite in South America, about working for Petrolite in Venezuela. As an inducement, Land allegedly told Barnhouse that he would receive, in addition to increased salary and living expenses, a year-and-a-half credit for each year worked overseas toward calculating his retirement benefits and retirement age.[1] Moreover, Land allegedly told Barnhouse that his benefits would be calculated based upon the same income amount reported to the Internal Revenue Service for federal income tax purposes. These oral representations were never reduced to writing and were not included in the terms of the retirement plan. Based upon these terms, appellee agreed to work in Venezuela and continued to do so until his employment ended in 1971.

By their first and second points of error, appellants argue that the trial court erred in failing to find that appellee's causes of action were preempted by the *Employee Retirement Income Security Act of 1974*, 88 Stat. 829, as amended, 29 U.S.C. §§ 1001–1461 (1985) ("ERISA"). ERISA was enacted by Congress as a comprehensive plan designed to protect employees and beneficiaries in employee benefit plans by imposing various uniform standards and regulations. *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, ——, 111 S.Ct. 478, 481–82, 112 L.Ed.2d 474 (1990). This uniformity is achieved through ERISA's preemption clause which provides that ERISA supplants "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." *Rodriguez v. Meba Pension Trust*, 872 F.2d 69, 71 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989); 29 U.S.C. § 1144(a) (1985).

Appellee contends that ERISA preemption is inapplicable in this case because the alleged acts giving rise to appellee's claims occurred prior to ERISA's effective date. In support of this position, appellee relies upon ERISA's preemption clause which provides that ERISA does not apply with respect to any cause of action which arose, or any act or omission which occurred before January 1, 1975. 29 U.S.C. § 1144(b)(1) (1985). Hence, the applicability of ERISA's preemption clause depends upon 1) a determination of the date a claimant's cause of action arose and 2) a determination of the date when an alleged "act or omission" occurred. *See Rodriguez*, 872 F.2d at 71; *Degan v. Ford Motor Co.*, 869 F.2d 889, 894 (5th Cir.1989); *Quinn v. Country Club Soda Co.*, 639 F.2d 838, 840 (1st Cir.1981). We first address whether appellee's causes of action arose prior to ERISA's effective date.

---

1. The parties stipulated at trial that Petrolite would give appellee an additional half-year credit for each year employed overseas toward the "calculation" of his retirement benefits. The method of calculating retirement benefits and the eligible age of retirement remained in dispute.

It is well settled that an ERISA cause of action does not accrue until a claimant is formally denied pension benefits.[2] *Rodriguez*, 872 F.2d at 72; *Degan*, 869 F.2d at 894; *Quinn*, 639 F.2d at 840. Here, the record establishes that appellee first inquired about his retirement benefits in February 1979. Thereafter, a series of letters were exchanged between the parties concerning appellee's "earnings rate," plan options, and eligible retirement dates. In March 1984, appellee demanded that his benefits be "recalculated using the correct figures" and that benefits presently due be disbursed. On April 18, 1984, the Retirement Plan formally rejected appellee's claim stating that the earnings rate used in the calculation of appellee's benefits was correct and that appellee was not entitled to receive benefits until he reached age sixty-five. Thus, it is clear that appellee was formally denied benefits after ERISA's effective date.

We now turn to the more difficult question before this court: whether ERISA applies when a claimant's application for benefits is denied post-ERISA, but at least some of the acts or omissions complained of occurred pre-ERISA. A review of the Federal Circuits to consider this issue establishes two competing views centered upon differing interpretations of the phrase "acts or omissions." *Compare Rodriguez*, 872 F.2d at 72; *Degan*, 869 F.2d at 894; *Tanzillo v. Local Union 617, Int'l Bhd. of Teamsters*, 769 F.2d 140 (3rd Cir.1985); *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 313–14 (8th Cir.1979); with *Shatto v. Evans Prods. Co.*, 728 F.2d 1224, 1226 (9th Cir.1984); *Quinn*, 639 F.2d at 840.

Appellee, citing the minority view, argues that ERISA is not applicable in this case because appellants' fraudulent representations are "acts or omissions" which occurred prior to ERISA's effective date. In *Quinn*, a claimant made a demand for retirement benefits after ERISA's effective date alleging that he was a "full time salaried office employee" and was, therefore, included under the terms of the retirement plan. The claim was not acknowledged. Thereafter, the plan was terminated, and the claimant was not included in the distribution of the plan assets. The claimant brought suit alleging that the plan trustees breached their duty as fiduciaries. The plan trustees answered that the claimant was informed at the plan's inception and numerous times thereafter that he was not a participant in the plan. The Court construed the phrase "act or omission" as referring to those significant facts which give rise to claim but fall short of establishing a cause of action. *Quinn*, 639 F.2d at 840. Hence, the Court held that state law controlled because the claimant's "basic quarrel is with a policy and course of conduct that was fully instituted ... and communicated to him" many years prior to ERISA's effective date. *Id.* Similarly, the Ninth Circuit has also adopted an interpretation which provides that ERISA's applicability turns on whether the acts after ERISA's effective date were merely formalities adjunct to acts which were more "substantially related" to the cause of action. *Shatto*, 728 F.2d at 1226.

The majority of Federal Circuits, however, have interpreted the phrase "acts or omissions" to require ERISA preemption in cases involving pre-ERISA conduct when benefits are denied post-ERISA. In *Degan*, under facts similar to this case, the Fifth Circuit held that an employee could not recover benefits based upon "oral assurances" which were made by his employer pre-ERISA. The Court rejected the employee's contention that the oral statements were "acts or omissions" which prevented ERISA preemption. *Degan*, 869 F.2d at 894. The Court held that Congress intended the phrase "acts or omissions" to refer to those acts which set in motion legal proceedings *other* than causes of action. *Id.* The Court reasoned that Congress intended such an interpretation because to hold otherwise would render ERISA inapplicable in any case in which

---

2. One rationale for this rule is that "lay" participants and beneficiaries would otherwise be required to be continually alert to potential errors and abuses which might give rise to an ERISA cause of action and start the running of limitations. *Rodriguez*, 872 F.2d at 72.

some of the facts occurred prior to ERISA's effective date. *Id.* The Court determined that the preemptive provisions of ERISA are "deliberately expansive" and designed to establish pension plan regulation as an exclusively federal concern. *Id.*

Similarly, in *Winer,* the Court refused to find that ERISA was inapplicable based upon the pre-ERISA conduct of two employees. The two employees were denied pension benefits post-ERISA because of receiving "kickbacks" several years before ERISA's effective date. *Winer,* 593 F.2d at 313–14. The pension plan had a "bad boy" clause which allowed pension benefits to be denied for employee misconduct. *Id.* The plan argued that the employee's acts were "acts or omissions" which occurred before ERISA's effective date and, therefore, ERISA should not apply. The Court rejected this contention finding that the critical fact in the case was the plan's post-ERISA denial of benefits. *Id.*

Upon review of the relevant federal cases set forth above, we adopt the majority view and hold that appellee's claims are governed by ERISA and are subject to ERISA preemption. We find that the majority view comports with Congress' intention that exceptions to ERISA preemption be narrowly construed. This approach provides for an "expansive" application of ERISA preemption in accordance with the United States Supreme Court's recent decision in *McClendon.* Additionally, it has the advantage of certainty because courts need only look to the date of a plan's determination of benefits to ascertain whether ERISA applies. The majority view prevents pre-ERISA conduct from being judged by post-ERISA standards. Indeed, equity mandates such an approach: plan participants would otherwise be required to be continually alert to potential errors and abuses which might give rise to an ERISA cause of action and start the running of limitations. *See Rodriguez,* 872 F.2d at 72. We find that the critical act or omission in this case is the Retirement Plan's denial of pension benefits after ERISA's effective date.

We now address the effect of ERISA preemption in this case. Section 1132(a)(1)(B) and (e) provide that federal and state courts have concurrent jurisdiction of actions to recover benefits due under a plan, to enforce rights under a plan, or to clarify rights to future benefits. *Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 545 (1991). Any other cause of action is within the exclusive jurisdiction of the federal courts. *Id.;* 29 U.S.C. § 1132(e)(1) (1988).

When ERISA's preemptive effect would only result in a change of the applicable law, preemption is an affirmative defense that must be set forth in the defendant's answer or it is waived. *Dueringer v. General Am. Life Ins. Co.,* 842 F.2d 127, 129–30 (5th Cir.1988); *Gorman,* at 546. If, however, the claim does not fall within the scope of § 1132(a)(1)(B) & (e), then assertion of ERISA preemption would deprive the state court of subject matter jurisdiction to hear the claim and may be raised for the first time on appeal. *Gorman,* at 547.

Here, in its answer, appellants raised ERISA preemption as an affirmative defense. We first determine whether any of appellee's causes of action fall within the scope of § 1132(a)(1)(B) & (e) and, therefore, within the trial court's subject matter jurisdiction. Appellee alleged breach of contract, breach of fiduciary duty, quantum meruit, fraud, mental anguish, and breach of good faith and fair dealing as grounds of recovery. Appellee also sought a declaratory judgment regarding his future benefits. A cause of action for breach of contract may be construed as a claim for benefits due under a retirement plan. *Gorman,* at 547–48; *see also Ames v. Ames,* 776 S.W.2d 154, 157–58 (Tex. 1989). Similarly, appellee's request for a declaratory judgment is within the scope of § 1132(a)(1)(B) & (e). Thus, we find that ERISA does not preempt the trial court's subject matter jurisdiction over appellee's breach of contract claim and request declaratory judgment; rather, ERISA operates to displace state law in favor of federal law. Appellee's remaining causes of ac-

tion, however, are not within the scope of § 1132(a)(1)(B) & (e) and fall within the exclusive jurisdiction of the federal courts. Therefore, the trial court lacked subject matter jurisdiction over appellee's causes of action other than appellee's claim for breach of contract and suit for declaratory judgment.

We now examine appellee's action for breach of contract and declaratory judgment under federal law. Appellee's claim for breach of contract and suit for declaratory judgment are premised upon alleged oral representations made by Petrolite as an inducement for Barnhouse to work in South America. These representations were never included as written terms of the retirement plan. Appellant maintains that appellee's cause of action for breach of contract and suit for declaratory judgment must fail because they are premised on impermissible oral modifications of the retirement plan. We agree.

■ When state and federal courts have concurrent jurisdiction under ERISA, the application of ERISA is an affirmative defense that must be pleaded at the peril of being waived. *Gorman,* at 545–46. Appellant raised the applicability of ERISA repeatedly and has not waived the application of the act to those claims that are cognizable in a state court forum. ERISA expressly mandates that all employee benefit plans must be established and maintained pursuant to a written instrument. *Degan,* 869 F.2d at 895; 29 U.S.C. § 1102(a)(1). The written plans must expressly identify who has authority to amend the plan and designate the proper procedures for amendment. 29 U.S.C. § 1102(b)(3).

■ The rationale for these strict requirements is to insure that oral agreements could not be used to undermine the stability and solvency of retirement plans. *Degan,* 869 F.2d at 895. In *Degan,* the Fifth Circuit acknowledged that current ERISA provisions result in a "betrayal without remedy" when an employee relies upon an employer's "empty oral assurances" concerning rights to future pension benefits. *Id.* However, like the Court in *Degan,* we are constrained to follow ERISA's explicit preference for written agreements. Therefore, we find that appellee's cause of action for breach of contract and suit for declaratory judgment are not cognizable under ERISA because they rest upon impermissible oral modifications of the retirement plan. *See Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989); *Degan,* 869 F.2d at 895; *Straub v. Western Union Tel. Co.,* 851 F.2d 1262 (10th Cir. 1988). We sustain appellants' first and second points of error. In light of our disposition of those points, we need not address appellants' remaining points of error. TEX. R.APP.P. 90(a).

The judgment of the trial court is REVERSED and RENDERED.