**Sidney W. DEGAN, Jr.,**
**Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL–CIO, Defendants–Appellees.**

No. 88–3162
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 13, 1989.

Sidney W. Degan, III, New Orleans, La., for plaintiff-appellant.

G. Phillip Shuler, Kevin L. O'Dea, Julie D. Livaudais, New Orleans, La., for Ford Motor Co.

Jay Thomas Youngdahl, Deborah A. Jeon, Little Rock, Ark., for UA Local 855, Intern. Union, United Auto. Aerospace.

Before POLITZ, KING, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiff Sidney W. Degan, Jr., brought suit against his former employer and union, alleging breach of an oral agreement to pay special early-retirement benefits and full pension benefits as provided for in the retirement plan and agreement applicable to him. The district court granted summary judgment for defendants, holding that Degan's cause of action was in substance a hybrid section 301/fair representation suit against both employer and union. With the claim so cast, the court determined that Degan had not filed his suit within the applicable six-month statute of limitations and thus held that the suit was time-barred. We affirm, but for different reasons.

## I. *A Broken Promise.*

After his discharge from the Navy in 1946, Degan began his employment with Ford Motor Company ("Ford") at its New

Orleans parts distribution facility. That employment relationship would eventually last twenty-four years, during the whole of which Degan was a member of the United Auto Workers, Local 855 (the "union"), which had a collective bargaining agreement with Ford. Degan was covered by various Ford/union pension plans, the plan at issue here having been incorporated into a 1967 agreement.

Ford made a business decision to close the New Orleans facility in 1970, when Degan was forty-five years old. Ford offered the employees of that facility, including Degan, several options: relocation out-of-state; receipt of lump-sum separation pay; or receipt of "sub-pay"—the separation amount spread out in installment payments over a one-year period. In his affidavit, Degan testified that, in answer to his queries, representatives of Ford and the union advised him of a special benefits package available to New Orleans employees: If he took separation pay, Degan would still be eligible for early-retirement "partial pension benefits" at age fifty-five, and then full benefits at age sixty.

Apparently, that package was acceptable to Degan, who applied for and received $5,243.55 in separation pay. However, the application for that pay, which Degan signed, specified that acceptance of the pay would result in a "break in seniority." Degan did not realize that a break in seniority made an employee ineligible for early-retirement benefits under the Ford/union retirement plan.

After several months of unemployment, Degan hired on with Caterpillar Tractor Company and worked there for fourteen years, until his retirement. During that time, he maintained contact with Adrian J. Sylvera, a co-employee at Ford who also had elected to receive separation pay and early-retirement benefits at the 1970 closing. Sylvera, who was older than Degan, applied for and received his early-retirement benefits upon reaching age fifty-five.

On March 7, 1979, at age fifty-four, Degan wrote to Ford stating that he desired his early-retirement benefits to commence on his birthday and requesting the appropriate application forms. Seven months later, he heard the first words of betrayal: A letter from Ford, dated October 2, advised him that his "break in seniority" made him ineligible for the benefits he requested. As a consolation, he was told he would be eligible for an early deferred vested pension upon reaching his sixtieth birthday.

Degan contacted a union official in charge of pension matters who, after a purported investigation, told him nothing could be done. When Degan inquired as to why he was being treated differently from Sylvera, the official told him that Ford had "made a mistake" in Sylvera's case and was not likely to do so again. Degan contends that he made numerous amicable attempts, to no avail, to convince Ford and the union that he should receive the package of benefits to which he believed he was entitled.

In September 1981, Degan retained counsel, who made a written demand upon Ford for the early-retirement benefits, retroactive to Degan's fifty-fifth birthday. In February 1982, Ford refused the demand, offering the same explanation given to Degan two years earlier.

## II. *Summary Judgment See–Saw.*

Degan filed suit in Louisiana state court in March 1986, claiming breach of contract and seeking both partial and full pension benefits previously promised him by Ford's and the union's representatives. Ford removed the suit to federal district court, predicating jurisdiction on both diversity and federal question grounds, the latter including Ford's contention that Degan was alleging a breach of the collectively-bargained retirement plan and that thus his cause of action was preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1]

1. 29 U.S.C. § 185(a) provides:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or

In March 1987, Ford filed a motion for summary judgment seeking dismissal of Degan's suit, contending that the suit was time-barred under either the six-month limitations period set forth in section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), or the limitations periods stated in ERISA, 29 U.S.C. § 1144. The district court denied the motion, holding that because the appropriate statute of limitations in straightforward section 301 suits is the state statute pertaining to contract actions, Louisiana's ten-year statute was applicable.

In November 1987, Ford again filed for summary judgment, setting forth the same timeliness claims. In February 1988, the court announced that it had made a mistake in its earlier denial of the defendants' summary judgment motion. Observing that Degan had brought suit against both Ford and the union, the court characterized Degan's suit as a "hybrid section 301" action and explained:

> A hybrid § 301 suit is a suit comprising two causes of action. First, the employee seeks relief under § 301 alleging a breach of the collective bargaining agreement. Second, the suit against the Union is for a breach of the Union's duty of fair representation.

> The plaintiff's claims indicate that he is asserting a hybrid § 301 claim. He has alleged that Ford breached the collective bargaining agreement by failing to pay the benefits which he asserts are rightly due to him. He also sued the union claiming that it breached its duty of fair representation by inducing him to take the lump sum separation payments without informing him of the ramifications of his decision.

Following *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983), the district court applied the six-month statute of limitations in section 10(b) of the NLRA and held that Degan's suit was time-barred.

■ We review the district court's action *de novo,* applying the same standards without regard to the citizenship of the parties

which the court used. *See Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.1987). Thus, we review the record independently, make any factual inferences in favor of the nonmovant, and then ask whether the movant is entitled to judgment as a matter of law. *See Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). In addition, summary judgment may be affirmed, regardless of the correctness of the district court's rulings, when we find in the record an adequate, independent basis for that result. *See Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988).

### III. *Claim Confusion.*

#### A. NLRA/LMRA Claims.

■ The district court categorized this suit as a hybrid section 301/fair representation suit subject to a six-month statute of limitations per *DelCostello,* 462 U.S. at 166, 103 S.Ct. at 2291. However, this characterization of Degan's claims cannot have been correct, for the simple reason that Degan never complained of the breach of a *collectively bargained* contract, the sole province of section 301 actions. *See* 29 U.S.C. § 185. Degan's contractual claims assert only that the employer's oral promises to himself and several others similarly situated at the close of the New Orleans part facility are enforceable. He does not allege that these separate oral agreements were collectively bargained. Thus, since Degan's contractual claim was not one arising under section 301, his suit cannot be "hybrid" in nature.

■ Degan may, however, have adequately framed a fair representation claim against his union for having irresponsibly informed him that he would receive early retirement benefits if he took separation pay. *See Acri v. International Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1397 (9th Cir.), *cert. denied,* 479 U.S. 816, 107 S.Ct. 73, 93 L.Ed.2d 29 (1986). Yet, such claims are subject to the six-month statute of limitations period set

forth in section 10(b) of the NLRA. *See Richardson v. United Steelworkers of Am.,* 864 F.2d 1162, 1167 (5th Cir.1989).

Degan's suit, filed in March 1986, could not have come within that limitations period; his cause of action against the union most likely arose in January 1980, when he received a letter from a union representative informing him that the union had made inquiries with respect to his eligibility for early retirement benefits and had received a negative answer which the union implicitly was willing to accept. Even assuming that Degan's cause of action against the union did not arise until February 1982, when Ford unequivocally rejected Degan's lawyer's demand letter, his complaint against the union falls well outside the section 10(b) limitations period. Hence, summary judgment remains appropriate with regard to this aspect of Degan's complaint.

### B. ERISA Claims.

The most obvious of Degan's complaints against Ford and the union alleges that he is entitled to early retirement benefits as a result of the oral assurances made to him in 1970. Degan maintains that these assurances constitute enforceable oral contracts. He protests, however, that his contractual claims to pension benefits are premised upon state-law causes of action alone, rather than federal claims under ERISA. Yet even if we heed his protestations, the district court nevertheless had subject matter jurisdiction.

**2.** *Cf. Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (though ERISA's saving clause excepts from its preemption clause laws that "regulate insurance," state common-law cause of action for insurance bad faith was preempted because such actions are not based upon laws spreading policyholder risk or dealing with an integral part of policy relationship, and are not limited to breaches of insurance agreements alone).

**3.** *Cf. Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (Maine statute requiring employers to provide one-time severance payment to employees in event of plant closing held not preempted by ERISA).

### 1. ERISA Preemption and the *Avco* Principle.

As the Supreme Court recently declared in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), common-law contract and tort claims based upon laws of general application, that is, not specifically related to insurance [2] or employee severance [3] or discrimination,[4] are preempted by ERISA, rather than section 301 of the NLRA, to the extent that they relate to an employee benefit plan. Moreover, when beneficiaries bring such claims to recover benefits from a covered plan, those claims fall under ERISA's 29 U.S.C. § 1132(a)(1)(B),[5] which provides an exclusive federal cause of action for the resolution of such claims. *See Shaw.* Thus, the Court also held that in addition to preempting the state-law claims, ERISA's preemptive and civil enforcement provisions operate to "recharacterize" such claims into actions arising under federal law.

Such recharacterization of state-law claims for benefits under covered plans is made necessary by the following corollary to the well-pleaded complaint rule: "Congress may so completely pre-empt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* In the past, the Court has applied this corollary to suits brought against an employer for breach of a collective bargaining agreement—suits that are preempted by section 301 of the NLRA. *See Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126

**4.** *Cf. Shaw v. Delta Air Space, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (New York's Human Rights Law, provisions of which prohibit discrimination on the basis of pregnancy, held not preempted by ERISA to the extent that the provisions prohibit employment practices that would be illegal under title VII).

**5.** 29 U.S.C. § 1132(a)(1)(B) declares:
A civil action may be brought—
(1) by a participant or a beneficiary—

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

(1968). These applications have given rise to what is now known as the *Avco* principle:

> [T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

*Taylor*, 481 U.S. at 64, 107 S.Ct. at 1546 (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983)). In *Taylor*, the Court concluded that the similarities in language between section 301 of the NLRA and ERISA's 29 U.S.C. § 1132(f),[6] coupled with ERISA's legislative history, required application of the *Avco* principle to the plaintiff's state-law contract claims for benefits under an ERISA-covered plan. We do the same today.

■ Degan, however, challenges the preemptive effect of ERISA in this case on the ground that ERISA was not in effect when the promises in dispute here were made to him. He points to language in section 1144(b)(1) to the effect that ERISA's supersedure provision "shall not apply with respect to any cause of action which arose, or any act or omission which occurred before January 1, 1975." Degan claims that the relevant "acts or omissions" that occurred in this case, namely, the oral assurances from Ford and union representatives that he would receive early-retirement benefits, occurred during the 1970 plant closing, and thus his cause of action is not preempted by ERISA and its limitations statutes.

We have held previously, however, that interpretations of the "act or omission" clause of section 1144(b)(1) are "confined to acts or omissions that set in motion legal proceedings other than causes of action." *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 971 (5th Cir. Unit A Apr. 1981) (citing administrative and criminal proceedings as examples of "proceedings other than causes of actions"). Our reasons for so holding were two-fold: First, interpreting "act or omission" in the broad manner Degan desires, that is, as excepting from ERISA preemption any suit in which some of the facts occurred prior to 1975, would render the first clause of section 1144(b)(1) superfluous. *Id.* In other words, under Degan's interpretation it would not matter when the cause of action arose so long as the relevant acts or omissions occurred prior to 1975.

Second, we found that creating such a broad exception would conflict with Congress's goal of providing access to federal courts for litigants seeking to enforce their rights under a collectively-bargained pension plan. *See id.* (citing 29 U.S.C. § 1132(a)(1)(B)). Degan therefore cannot include Ford's and the union's oral assurances as pre–1975 acts or omissions that would exempt his cause of action from ERISA's preemptive reach.[7]

Thus, we are left with the question of whether Degan's cause of action arose on or after January 1, 1975. Our previous cases have fashioned a rule of interpretation for this exception as well. In *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir. Unit A Feb. 1981), *cert. denied*, 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981), we held that "a cause of action does not become a presently enforceable demand until a claim is denied.... [Thus], for purposes of ERISA a cause of action does not accrue until an application is denied."

---

**6.** 29 U.S.C. § 1132(f) states:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action.

**7.** This conclusion finds further support in the general principle that the preemptive provisions of ERISA are "deliberately expansive, and de-

signed to 'establish pension plan regulations as exclusively a federal concern.'" *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). A logical corollary to this maxim is that the statutory exceptions to ERISA's preemptive reach should be construed narrowly.

However, applying even this clear-cut rule is made somewhat difficult in this case because Degan never formally submitted an application for early-retirement benefits. The document in the record that most closely resembles a denial of a claim is Ford's rejection of Degan's attorney's demand letter in 1982. Because that date falls well after the effective date of ERISA, we conclude, contrary to Degan's assertions, that ERISA governs this claim. However, it is not necessary for us to turn to an analysis of whether Degan's claim is time-barred under appropriate ERISA or state law provisions. Instead, we hold that Degan's claim, premised as it is upon oral modifications to a retirement plan, is not cognizable under ERISA.

### 2. Betrayal Without Remedy.

In adjudicating disputes between labor and management with respect to the LMRA or ERISA, Congress intended that federal courts should create federal common law. *See Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957). However, this power extends only to areas which federal law preempts but does not address. *See Wheeldin v. Wheeler*, 373 U.S. 647, 651–52, 83 S.Ct. 1441, 1444–45, 10 L.Ed.2d 605 (1963); *see also* C. Wright, *Law of Federal Courts* § 60 at 393–94 (4th ed. 1983). Degan presents us with a sympathetic, estoppel-based argument for fashioning federal common law that would prevent employers and union officials from consoling displaced employees like Degan with empty oral assurances about rights to pension benefits, especially when repudiation comes after years of expectations. The problem, however, is one for Congress and not this court to resolve, for we are bound by ERISA's emphatic preference for written agreements.

ERISA expressly requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written in-strument." 29 U.S.C. § 1102(a)(1). In addition, the written plans must "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." *Id.* § 1102(b)(3). Thus, ERISA mandates that the plan itself and any changes made to it were to be in writing. The reasons for Congress's strictures in this area are obvious: Oral agreements would undermine Congress's goal of fashioning a comprehensive system of federal law designed to strengthen and protect the interests of employees in their expected retirement benefits. *See Shaw v. Delta Air Space, Inc.*, 463 U.S. at 90, 103 S.Ct. at 2896. (1983).

Applying the common-law concept of estoppel would mean presenting retirement plan administrators with claims for payment from individuals, otherwise ineligible, who were parties to oral agreements that, like the one before us, have lain unsuspected and inert for years. That prospect would threaten the stability and solvency of many plans upon which so many other employees are dependent. Hence, we join the other circuits that have held, consistently with the words of the statute, that ERISA precludes oral modifications to benefit plans and that claims of promissory estoppel are not cognizable in suits seeking to enforce rights to pension benefits.[8]

### IV. *Unhappy Denouement.*

Hence, summary judgment was proper here, but not for the reason given by the district court. First, any fair representation claim Degan may have against his union is time-barred. Second, his action to recover pension benefits is preempted by ERISA and, because it was predicated upon oral modifications to the pension plan and promissory estoppel, it is not a cognizable claim under that act.

We express no view upon whether Degan could still prevail on discrete theories of recovery in a separate action.[9] Though we

**8.** *See Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1265–66 (10th Cir.1988); *Northwest Administrators, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226–27 (9th Cir.1987); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986).

**9.** We note, for example, that Degan may have a valid claim against the pension plan itself, a party he failed to name as a defendant, on a theory that his signature on the application for separation pay was done without full knowledge

896

are reluctant to uphold a summary judgment when the district court has evinced some confusion as to the proper characterization of a plaintiff's claims, we cannot discern, from the arguments now before us, a theory of recovery that raises a genuine issue of material fact sufficient to send this case to trial.  Hence, finding adequate and independent grounds in the record, we AFFIRM.

of the consequences and therefore was not an effective waiver of his right to vested pension benefits.  *See, e.g., McKnight v. Southern Life & Health Ins. Co.,* 758 F.2d 1566 (11th Cir.1985); *Wolf v. National Shopmen Pension Fund,* 728 F.2d 182 (3d Cir.1984); *Elser v. I.A.M. Nat'l Pension Fund,* 684 F.2d 648 (9th Cir.1982).