**Mary R. WELLS, et al.,
Plaintiffs–Appellees,**

v.

**GENERAL MOTORS CORPORATION,
Defendant–Appellant.**

**No. 88–4665.**

United States Court of Appeals,
Fifth Circuit.

Aug. 24, 1989.
Rehearing and Rehearing En Banc
Denied Sept. 28, 1989.

Paul O. Miller, III, W. Thomas Siler, Jr., Miller, Milam & Moeller, Jackson, Miss., for defendant-appellant.

Richard C. Roberts, III, Edward J. Currie, Jr., Whitman B. Johnson, III, Jackson, Miss., for plaintiffs-appellees.

Before REAVLEY, POLITZ, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

We review here another case involving alleged promises made and broken in the highly-charged environment of large-scale layoffs and shifts in the labor market.[1] The thirty-two plaintiffs in this action are former employees at the Packard Electric plant, a subsidiary of General Motors Corporation ("GM"), in Clinton, Mississippi. When GM announced layoffs in 1983, it negotiated with the union a separation agreement, according to which employees could opt for a severance payment in lieu of preserving their seniority and rehire rights. At meetings to explain the plan, a GM representative allegedly told the employees that they could be rehired if new jobs were created, although they would have to apply like everyone else. Plaintiffs contended that when new positions opened in 1985, management informed them they were ineligible under the severance plan.

The plaintiffs sought redress in the district court, basing jurisdiction upon diversity, and positioning their claims upon theories of state law fraud and misrepresentation. GM moved for summary judgment on the ground that the district court lacked subject matter jurisdiction since the proper forum was the National Labor Relations Board ("NLRB" or "Board"). In the alternative, GM claimed that plaintiffs' state law claims were preempted by federal law. The district court denied the motion and certified the question for interlocutory appeal. We accepted the case for review and now affirm, holding that the NLRB has no jurisdiction and that state law governs the action.

I. *Right To Be Considered for Rehire.*

In 1982, demand for domestic automobiles began to slump, resulting in planned layoffs at the Packard Electric plant ("the plant"). A committee comprised of both union and management created the Voluntary Termination of Employment Plan (the "VTEP"), offering severance pay, either in lump-sum or two-year-installment payments, to those who agreed to resign. This much the parties agree upon; they differ with respect to GM's position concerning the future employment eligibility of those who opted for the VTEP.

GM's version of the facts contradicts that of the plaintiffs and their union in every important respect. GM contends that the parties raised the issue of "rehire rights" in bargaining over the VTEP and that GM officials specifically told union representatives that employees opting for VTEP would not be eligible for rehire. Plaintiffs and their union claim that the representatives asked about future eligibility and were told that would be "no problem." GM alleges that during collective bargaining over the plan's details, management negotiators told union negotiators that employees who accepted plan benefits would not be eligible for rehire. GM further contends that when its officials presented the plan to the employees, they told the employees that those accepting plan benefits would be ineligible for rehire. Lastly, GM reads the VTEP itself as

---

1. *E.g., Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir.1989) (promise concerning availability of retirement benefits after employer's sale of assets to another company); *Degan v. Ford Motor Co.,* 869 F.2d 889 (5th Cir.1989) (promise concerning availability of early retirement benefits for employee who, during plant closure, accepted severance pay); *Bache v. American Tel. & Tel. Co.,* 840 F.2d 283 (5th Cir.) (promise of job security following reorganization and divestment of subsidiaries), *cert. denied,* ––– U.S. –––, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988).

"vague" and "ambiguous" on the issue of employee eligibility for rehire.

Plaintiffs would explain the differing factual accounts as a semantic miscue: GM's references were to "rehire rights," a term of art as between the parties that denotes those rights held by laid-off employees under the general collective bargaining agreement. Such rehire rights would include the rights of laid-off employees to be called back in a certain priority, to have their seniority and benefits reinstated, to work at a particular wage level, and so forth. In contrast, plaintiffs assert that the issue of "future employment eligibility" was independent of the discussion of rehire rights, concerned only the potential for those who opted for VTEP of ever being GM employees again, and was *not* the subject of collective bargaining.

Plaintiffs, who are thirty-two former GM employees who opted for VTEP, brought independent actions in federal district court, premising jurisdiction upon diversity and alleging (1) that GM, when presenting the VTEP to employees, offered false inducements to employees to opt for the VTEP, in the form of promises concerning future employment eligibility; (2) that GM knew these inducements and representations were false; (3) that plaintiffs relied upon these representations in accepting the plan; and (4) that plaintiffs were injured as a result of this reliance.

## II. Subject Matter Jurisdiction: Is This a Case for the NLRB?

Congress vested exclusive jurisdiction in the NLRB over conduct that is "arguably protected or arguably prohibited" by sec-

tions 7 and 8 of the NLRA. *See International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 394, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986).[2] These sections protect the right of the employees to engage in collective bargaining and prohibit both management and labor from engaging in the enumerated unfair labor practices. 29 U.S.C. §§ 157, 158. GM bears the burden of showing that the challenged conduct is arguably protected or prohibited by the NLRA. *See Davis,* 476 U.S. at 395, 106 S.Ct. at 1914. It presents three arguments designed to meet this burden and invoke NLRB jurisdiction. We deal with each argument in turn, reviewing them as did the district court; that is, after examining the record *de novo* we resolve all reasonable doubts and draw all reasonable inferences in favor of the non-movant, and then determine whether the movant is entitled to judgment as a matter of law. *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988).

## A. Mandatory Subjects of Bargaining.

First, GM contends that future employment eligibility is a mandatory subject of bargaining under 29 U.S.C. § 158(d); hence, plaintiffs' claims about GM's representations necessarily implicate GM's good faith in bargaining, or in failing to bargain,[3] over the future-employment issue. GM also asserts that its conduct was arguably prohibited or protected by the NLRA because section 8(a)(5) requires employers to bargain with union representatives before modifying policies that affect mandatory subjects of bargaining. *See Armour & Co.,* 280 NLRB 824, 826 (1986).[4]

---

**2.** Citing *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959).

**3.** Included within GM's good-faith bargaining obligation is the duty to provide adequate information about the subject at issue so that the negotiation process can function properly. *See NLRB v. Truitt Mfg. Co.,* 351 U.S. 149, 152, 76 S.Ct. 753, 755, 100 L.Ed. 1027 (1956) ("Good-faith bargaining necessarily requires that claims made by either bargainer should be honest claims."); *Serrano v. Jones & Laughlin Steel Co.,* 790 F.2d 1279, 1286–87 (6th Cir.1986). Thus, to the extent, if any, that GM "hid the ball" in the VTEP negotiations by keeping silent about its

intentions concerning employee eligibility for rehire, it would not have bargained in good faith.

**4.** In *Armour* the Board held that the employer's decision whether to allocate severance pay and vacation pay to weeks following the employee's termination date—which would result in making the employee ineligible for unemployment compensation in Wisconsin during that period—was a mandatory subject of bargaining. Contrary to GM's recitation of the holding in *Armour,* the Board did not declare that "the power to allocate ... rested exclusively within the authority of the employer in the sense that it was a traditional management prerogative." In-

■ The district court assumed *arguendo* that the VTEP was a mandatory subject of bargaining, such that GM had a duty to bargain with union representatives over the VTEP.[5] But the court concluded that the issue of future eligibility for rehire was not, in itself, a mandatory subject of bargaining so as to require GM to engage in bargaining over that issue as well: "The fact that the matter at issue here, eligibility for future employment, in retrospect could have been and perhaps should have been included within [the VTEP] does not render that topic *a fortiori* a mandatory subject of bargaining."

■ We agree. As plaintiffs observe, the company's evaluation and consideration of individual applicants for employment lies "at the very core of entrepreneurial control." The Supreme Court has held that these types of managerial decisions are not mandatory subjects of bargaining. *See Ford Motor Co. v. NLRB*, 441 U.S. 488, 498, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979) (quoting *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 222, 85 S.Ct. 398, 409, 13 L.Ed.2d 233 (1964) (Stewart, J., concurring)). An employer's failure or refusal to bargain over a non-mandatory subject does not violate section 8(a)(5).[6] *See NLRB v. Wooster Div. of Borg–Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958).

Thus, the fact that future eligibility for rehire might, in the context of the VTEP, have an economic value for those workers who accepted the plan, or that GM raised the issue during collective bargaining (a claim which plaintiffs contest), does not transmogrify a management prerogative into a mandatory subject of bargaining. The status of the issue of future eligibility does not change by virtue of its relation to, or even its purported inclusion in, a union-management agreement concerning other mandatory subjects of bargaining. *See Wooster, id.* As plaintiffs note, to hold otherwise would provide both management and labor with a "bootstrap" with which to make any bargaining subject a mandatory one.

**B. Bargaining Directly with Employees.**

■ Section 8(a)(5) of the NLRA requires employers to bargain in good faith with employee representatives. We have read that section to preclude employers from circumventing those representatives by bargaining directly with employees. *See Standard Fittings Co. v. NLRB*, 845 F.2d 1311, 1317 (5th Cir.1988). GM asserts that in making its representations to the group of employees who attended the VTEP meetings, it engaged in conduct "arguably prohibited" by the NLRA. Thus, GM maintains that the NLRB is the appropriate forum to hear even the claims of those whose conduct the Act arguably prohibits; in even more basic terms, the implication of GM's argument is that if its con-

---

stead, the Board's point was that, *vis-a-vis the state,* the employer's authority to allocate vacation and severance pay on unemployment compensation forms gave it meaningful authority over the payment of unemployment compensation and hence, the ability to debase or enhance the worth of severance and vacation pay. The Board therefore did not imply that this authority was an exclusive management prerogative, *vis-a-vis the workers;* by holding that the employees were entitled to have their say in that decision, the Board concluded that it was not an exclusive prerogative.

**5.** The court supported this assumption with citations to labor cases involving disputes over the status of similar subjects of bargaining, such as pension plans and severance pay. *See Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971); *Armour.* We make no comment on the correctness of this assumption, as the issue is not before us: Here, the union and management indeed collectively bargained over the VTEP.

**6.** Moreover, if, as GM contends, future employment eligibility were a mandatory subject of bargaining by virtue of its value in the context of the VTEP, then the duty to bargain over that separate subject was not triggered unless and until there was a clear and unequivocal demand for bargaining by the union. *See NLRB v. Katz,* 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962) ("A refusal to negotiate *in fact* as to any subject that is within § 8(d), *and about which the union seeks to negotiate,* violates § 8(a)(5)" (emphasis added)). Hence, even if we accepted GM's argument that future eligibility itself was a mandatory subject of bargaining, GM's duty did not arise in the absence of such a demand.

duct indeed was wrong, it is the Board that should declare it so. We hold, however, that *Davis* defeats GM's attempt to invoke the NLRB's exclusive jurisdiction in this fashion.

■ In *Davis*, the Court gave the following construction to the phrase "arguably protected or prohibited":

> If the word 'arguably' is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor. That is, a party asserting pre-emption must advance an interpretation of the Act that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board. The party must then put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation.

476 U.S. at 395, 106 S.Ct. at 1914 (citations omitted). GM contends throughout its brief that its positions on the status of future employment eligibility as a bargaining subject and on the propriety (or impropriety) of its representations to the employees were not ones which the Board or courts have rejected authoritatively. But that contention, even if accepted, does not bring us to a resolution, for as the Court explains in the passage quoted above, the party attempting to invoke the Board's jurisdiction must then demonstrate that the Board could reasonably uphold that party's claim. The reason for this requirement is simple and instructive here: The exclusivity of the Board's administrative province, made necessary by the need for uniform treatment in labor disputes, may not serve as a shelter for those whose claims have no realistic chance of acceptance and no import for national labor policy. *Cf. Gray v. Local 714, Int'l Union of Operating Eng'rs*, 778 F.2d 1087, 1090 (5th Cir.1985) (employee's claim for fraudulent inducement not preempted by NLRA because alleged conduct was of only "peripheral concern" regarding federal law).

By its own cast, GM's argument concerning its "circumvention" of union representatives goes only to show that its conduct was arguably *prohibited* by the Board; hence, its claim could not reasonably be *upheld* by the Board.[7] Nor does GM convincingly demonstrate the import of its claim for national labor policy: As plaintiffs observe, the challenged conduct here was not an attempt on the part of GM to interfere with the collective bargaining process or to diminish the union's representative role; instead, it was a post-bargaining effort to induce individual employees to accept VTEP benefits. While not dispositive,[8] it is relevant that the parties had completed collective bargaining over the VTEP; GM's alleged inducements had no direct bearing upon the collective bargaining process in that they were not offered in order to obtain ratification of an agreement.[9] For better or worse, the bargaining

7. The same flaw is found in a similar argument made by GM, that is, that its failure to raise the issue of future employment eligibility amounted to a form of deception at the bargaining table and thus, a failure to bargain in good faith.

8. GM correctly observes that an employer that makes unilateral decisions concerning mandatory subjects of bargaining violates § 8(a)(5) regardless of whether the employer makes those decisions during collective bargaining or attempts to implement them after the collective bargaining agreement has been ratified. *E.g., Standard Fittings*, 845 F.2d at 1315; *Huck Mfg. Co. v. NLRB*, 693 F.2d 1176, 1186 (5th Cir.1982); *N L Industries, Inc. v. NLRB*, 536 F.2d 786, 789–90 (8th Cir.1976). Thus, had future employment eligibility been a mandatory subject of bargaining included in the agreement, GM's attempt to make a unilateral change after rat-

ification would have been a breach of its duty to bargain in good faith. Here, however, future eligibility was not a mandatory subject, nor is it GM's conduct in the collective bargaining process that is at issue; instead, it is the alleged inducement offered to the *individual employees* that is the source of plaintiffs' claims. As a result, adjudication of these claims under the rubric of state law presents little danger of subjecting the employer to conflicting substantive rules. *See Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368 (1983).

9. *Cf. Serrano* (employer allegedly made promises to keep coke plant open if steelworkers would accept and ratify concessions in addendum to collective bargaining agreement); *Parker v. Conners Steel Co.*, 855 F.2d 1510 (11th

process had served its function, and the union representatives had fulfilled their role. It was then left to the individual employees to choose whether they would opt for the plan, and it is upon that choice that GM's alleged inducements operated.

### C. Sweet Promises.

■ Finally, GM would have us hold that its representations at the VTEP meetings were protected expression under section 8(c) of the NLRA, which provides,

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158(c). Here, GM's contention is that its representations at the meetings amounted only to a statement of fact about the VTEP: Employees who opted for the plan were not eligible for rehire.

We cannot accept this characterization of the facts in the current procedural posture of the case. As we explain below, we find no provision in the VTEP that reasonably might be construed as governing the dispute over future eligibility. Making all reasonable inferences in favor of plaintiffs, we must conclude that GM's representa-

tions went beyond a recitation of what was contained in the VTEP. Hence, we can only construe GM's statements as a promise of benefit over and above what the VTEP offered. As such, GM's statements were not protected expression under section 158(c).

### III.  *Preemption.*

Holding as we do that the district court, and not the NLRB, had subject matter jurisdiction, we address GM's alternative claim that federal, rather than Mississippi, law governs this case.[10] GM premises its preemption claims upon both section 301 of the LMRA and section 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a). Though we agree with GM that the preemptive scope of these statutes is broad,[11] we conclude that it is not so broad as to reach this case.

### A.  Preemption Under Section 301.[12]

■ When resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between parties to a labor contract, the claim must be treated as a section 301 claim. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904,

---

Cir.1988) (same), *cert. denied,* — U.S. —, 109 S.Ct.2066, 104 L.Ed.2d 631 (1989).

10. Plaintiffs' claims of fraudulent inducement are premised upon Mississippi common law. *See Berkline Corp. v. Bank of Miss.,* 453 So.2d 699, 702 (Miss.1984), in which the Mississippi Supreme Court observed, "As all know . . ., running deep in our law is the notion that a person must respond where his statements or conduct reasonably induce another to rely to his detriment." The elements of a state law cause of action for fraud are set forth in *Martin v. Winfield,* 455 So.2d 762, 764 (Miss.1984), as follows: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. [Citations omitted.]

11. Under the *Avco* exception to the well-pleaded complaint rule, state law claims that implicate § 301 must be recharacterized as stating a federal cause of action. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968); *Aaron v. National Union Fire Ins. Co.,* 876 F.2d 1157, 1161–62 (5th Cir. 1989). The Supreme Court has held that the *Avco* principle operates to "federalize" state law claims implicating ERISA benefit plans as well. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987).

12. Section 301(a) provides,
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties. . . .
29 U.S.C. § 185(a).

1915, 85 L.Ed.2d 206 (1985).[13] But section 301 is not implicated unless resolution of the state claim requires *interpretation* of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988). The Court declared in *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318 (1987), that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement" (emphasis in original).[14] Here, the district court concluded that no interpretation of the collective bargaining agreement or of the VTEP would be required in order to resolve the plaintiffs' claims.

GM presents a forceful argument that resolution of plaintiffs' fraudulent misrepresentation claims requires interpreting the terms of the collectively-bargained VTEP. Its claim is that in order to determine whether GM falsely represented the consequences of accepting the VTEP, there must be an examination and interpretation of the VTEP to determine what a *truthful* representation would have been. In such a case, it argues, preemption occurs. *See Lingle.*

However, GM's position is flawed in two important respects: First, it is not the case that section 301 preemption occurs whenever a collectively-bargained agreement becomes relevant to a dispute of this nature; rather, the resolution of the particular dispute must be *"substantially* dependent upon analysis of the terms"* of the collective bargaining agreement. *Lueck,* 471

U.S. at 220, 105 S.Ct. at 1915. Second, the argument rests upon an unsound premise: namely, that the plaintiffs' claim is that GM's representatives fraudulently misrepresented what was in the contract. Instead, as plaintiffs observe, their claim was that GM fraudulently *induced* individual employees to opt for the VTEP by making an extraneous promise concerning their future employment eligibility. They do not claim that the promise had anything to do with the *contents* of the VTEP.

Thus, plaintiffs urge that they are not relying upon any contract at all, but only upon an inducement that was separate and apart from the VTEP, was not covered by it, and was never a subject of negotiation. It is GM that claims, as a defense, that the contract contemplates, albeit not expressly, the circumstances that eventually occurred and therefore must be "interpreted" in order to resolve these claims.

But that is not a defense to a fraudulent-inducement claim in this context. The dispute is a highly fact-bound one concerning what was said, or promised, at the meeting. The defense to such a claim is not that "the VTEP might be construed to say otherwise"; rather, it is that "we made no such representation" or that "no such representation could have been made given the VTEP's provisions."[15]

We recognize, as have other circuits, that the existence of an agreement nevertheless may invoke section 301 preemption where a court determines that the agreement contains provisions that might reasonably be construed as governing the disputed mat-

---

**13.** In *Lueck,* the Court carefully delimited the scope of its ruling, writing that it did not hold "that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by § 301." 471 U.S. at 220, 105 S.Ct. at 1915. We conclude that the instant claims, premised as they are upon independent state-created rights, present precisely the type of case which the Court excised from its holding by this language in *Lueck.*

**14.** In an analogous ERISA case involving another employee at the Packard Electric plant, we

recently held that the employee could litigate his state-law contractual rights in state court and that his claim was not pre-empted by ERISA. *See Hartle v. Packard Elec.,* 877 F.2d 354, 355–56 (5th Cir.1989) (per curiam).

**15.** GM has given tacit recognition to the necessity of this defense by asserting before us that, in fact, the statement of GM's representative was *the exact opposite of what plaintiffs claim* he said, in other words, that he told employees that they would *not* be eligible for rehire if they opted for the VTEP.

**174**

ter.[16] The agreement might, for example, contain provisions that are contrary to the representations made, or might reserve the particular issue for further collective bargaining or preclude such inducements on the part of employer representatives. Under such circumstances, interpretation of the collective bargaining agreement, in the sense of construction and application of these provisions, would be required, and federal law probably would govern.[17] But that is not the case here. After careful review of the VTEP, we find no provision that reasonably might be construed to govern the issue of future employment eligibility, nor are there "vague and ambiguous" references to eligibility that might be construed in GM's favor.

■ Therefore, we hold that where, as here, the employee/plaintiffs' state law claims are founded upon contractual rights or common-law rights independent of those which the collectively-bargained agreement creates, a defense that relies upon the provisions of a collectively-bargained agreement does not invoke federal preemption unless that agreement contains provisions that govern, or reasonably might be construed as governing, the circumstances at hand.[18] Contrary to GM's assertions here, a court's perusal of the agreement to determine whether such provisions are contained within it does not constitute "interpretation" of that agreement.

Because no governing provision can be found in the VTEP,[19] resolution of the

16. GM directs us to a number of cases, from other circuits, which it considers similar in fact to the instant case. The distinguishing characteristic of these cases, however, is that the subject agreements contained provisions that reasonably could be construed to govern the issue that had become the source of tension. *See, e.g., Darden v. United States Steel Corp.,* 830 F.2d 1116 (11th Cir.1987) (per curiam) (laid-off employees with rehire rights were "employees" nonetheless and could not avoid obligation under collective bargaining agreement to bring their grievance to arbitration); *Bale v. General Tel. Co.,* 795 F.2d 775 (9th Cir.1986) (contract definition of "temporary employee" governed dispute); *Gibson v. AT & T Technologies, Inc.,* 782 F.2d 686 (7th Cir.) (employees sought layoff allowance provided for in agreement), *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *Mason v. Continental Group, Inc.,* 763 F.2d 1219 (11th Cir.1985) (employer's closure of plant and termination of employees was governed by arbitration clause in agreement, especially where employees had two months between announcement and closing to bring grievances), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *Moore v. General Motors Corp.,* 739 F.2d 311 (8th Cir.1984) (contract provision concerning transfer was source of, and governed, plaintiff's claim that employer required transfer without exercising due care), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2320, 85 L.Ed.2d 839 (1985).

The same is also true of the Supreme Court precedents upon which GM relies. *See International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (employee's claim that union violated implied duty of care expressly premised upon collective bargaining agreements); *Lueck* (employee's complaint concerning bad-faith handling of disability benefits was substantially dependent upon analysis of contract and the implied duties arising thereunder).

17. *See supra* note 16.

18. *See Varnum v. Nu–Car Carriers, Inc.,* 804 F.2d 638, 640–41 (11th Cir.1986), *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 838 (1987). There, the court refused to invoke the preemption doctrine in the context of an employee's complaint that the employer should not have made a representation concerning a salary figure when, at the same time, it was drafting a change in the seniority system/pay scale that would have resulted in a lesser salary for the employee. The court concluded that the complaint did not go to "a term of employment covered by the collective bargaining agreement." Similarly, in *Anderson v. Ford Motor Co.,* 803 F.2d 953, 957 (8th Cir.1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987), the court rejected § 301 preemption of the state-law fraud claims of a group of laid-off employees whom Ford rehired and to whom Ford promised security against being bumped by employees on the preferential hiring list. The court held that *Lueck* did not mandate preemption, as the employees' rights to gain redress for fraud were independent of any contractually-established expectations of the parties.

19. GM argues in its reply brief that the contract's provisions concerning grievance procedures should govern the plaintiffs' attempt to resolve the dispute and that therefore, § 301 preemption is mandated. In the context of employees' claims that rest upon independent, state-created substantive rights, GM's argument begs the question. In *Lingle,* the Court recognized that although there are strong policies encouraging arbitration, "different considerations apply where the employee's claim is based upon rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." 108 S.Ct. at 1884 (quoting

plaintiffs' claims is not inextricably intertwined with the agreement in the sense described by the *Lueck/Hechler/Lingle* line of cases.[20] Under these narrow circumstances, the rationale supporting section 301 preemption, i.e., avoiding the danger of inconsistent interpretations of collectively-bargained labor agreements, is not at work. Mississippi has a deeply-rooted interest in protecting its citizens from fraudulent conduct, and unlike the federal scheme, provides remedies designed to compensate the victims of fraud for economic harm they may have suffered as a result of their reliance upon false promises. *See Moore*, 739 F.2d at 317 (Fagg, J., dissenting); *Berkline*, 453 So.2d at 702. Accordingly, we conclude that there is no federal preemption here.

## B. ERISA Preemption.[21]

The resolution of GM's ERISA preemption claim turns on whether the VTEP constitutes an "employee benefit plan" within the meaning of the statute. Relying principally upon the Supreme Court's re-

cent decision in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), we conclude that the VTEP is not such a plan.[22]

In *Fort Halifax*, the Court held that ERISA did not preempt a state statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. The Court based its decision upon several factors: First, ERISA refers to employee benefit plans, not employee benefits. Second, the goal of ERISA's preemption provision is to provide a single set of administrative practices for benefit plans in order to avoid a patchwork scheme of regulation. However,

> [t]his concern only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans*, rather than simply to *benefits*. Only a plan embodies a set of administrative practices vulnerable to the burden

*Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981)). Here, the state's substantive guarantees apply not just to workers, but to all individuals in their contractual dealings. The difficulty with arbitration, and thus the danger inherent in accepting GM's argument, is that even if an arbitrator were to conclude that some provision of the VTEP governed this dispute and dictated a resolution, "that conclusion might or might not be consistent with a proper interpretation of state law" and its substantive guarantees against fraud in the inducement. *Lingle, id.* at 1885.

20. Our holding does not require that a court conclude that the collectively-bargained agreement is *irrelevant* to the dispute; such an agreement might still be used by either party to support the credibility of its claims as to the alleged inducements or representations made. *Cf. Hartle v. Packard Elec.*, 877 F.2d at 356, holding that ERISA did not preempt an employee's claim, based upon Mississippi common law, that he had an employment contract with Packard Electric that was not subject to the "at-will" doctrine. The employee alleged that his participation in provisions of a General Motors pension plan created the employment contract. The court observed that "[u]nlike other cases in which preemption has been found to exist, Hartle's case does not in any manner implicate the federal regulation of employee benefit plans."

We find that the same is true here with respect to federal regulation of the collective-bargaining process. The VTEP contains provisions that govern unrelated aspects of the separation program (e.g., overpayments, repayment) but might be viewed as not inconsistent with future eligibility, though by no means could they be read as creating or precluding such eligibility. At most, those provisions will serve as evidence to support claims that the alleged inducements were or were not made, or to negate claims that the parties did not raise that issue in bargaining. The agreement thus may remain "intertwined" with the plaintiffs' state law claims; we seek only to mark that point at which it becomes "inextricably intertwined" with those claims.

21. ERISA states that

[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a).

22. *See also Hartle*, 877 F.2d at 356, holding that ERISA preemption does not occur where state law claims are "only peripherally connected to the concerns addressed by ERISA."

that would be imposed by a patchwork scheme of regulation. *Id.* at 11–12, 107 S.Ct. at 2217 (emphasis in original). Because the Maine statute did not require employers to maintain employee benefit *plans,* and because there was no need to create an administrative scheme to make a one-time lump payment, the Court held that the ERISA pre-emption provision did not apply.

The operative facts in *Fort Halifax* are remarkably similar to those in the instant case. GM established a procedure by which employees could elect to receive a one-time lump payment if they ceased working at the plant. The plan was not ongoing, nor was there any need for continuing administration of the payment program (though employees could elect a two-year installment payment option). The facts that GM made the payments pursuant to a Voluntary Termination of Employment *"Plan"* and that the employees received a benefit do not convert the plan into an "employee benefit plan" for purposes of ERISA.

### IV. *Conclusion.*

Holding as we do that the district court had subject matter jurisdiction over the plaintiffs' state-law fraudulent inducement claim and that that claim is not preempted by federal law, the district court's denial of GM's summary judgment motion is in all respects AFFIRMED. This cause, here on interlocutory appeal, is REMANDED to the district court for further proceedings consistent herewith.

REAVLEY, Circuit Judge, specially concurring:

The plaintiffs complain only of GM's representations to persuade them individually to choose the severance payment. GM does not demonstrate any relationship between the VTEP and its decision not to rehire the plaintiffs. I concur in the judgment.