Max F. KRUG, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CALTEX PETROLEUM CORPORATION, Defendant.

No. 3:93–CV–0732–X.

United States District Court, N.D. Texas, Dallas Division.

Sept. 14, 1994.

Jo Bess Jackson, Law Offices of Jo Bess Jackson, Roger Albright, Law Offices of Roger Albright, Dallas, TX, for plaintiffs.

William C. Strock, Dean J. Schaner of Haynes and Boone, Dallas, TX, for defendant.

## ORDER OF REMAND

KENDALL, District Judge.

Before the Court are:

1) Plaintiffs' Motion to Remand and Motion to Stay Ruling on Class Certification Pending Ruling on Motion to Remand and Brief in Support, filed October 22, 1993;

2) Defendant's Response, filed November 19, 1993;

3) Plaintiffs' Reply, filed December 20, 1993;

4) Plaintiff's Motion to Stay Ruling (on Defendant's Motion for Summary Judgment) Pending Decision on Plaintiffs' Motion to Remand, filed December 20, 1993; and

5) Defendant's Response, filed January 13, 1994.

The legal question presented in the Motion for Remand is a close one, and the parties have done an excellent job of briefing. After consideration of the motion, briefing, case law, and statutory law, the Court concludes that the Caltex Voluntary Separation Option Program and the Involuntary Separation Assistance Program are not "employee welfare benefit plans" under the Employee Retirement Income Security Act of 1974 ("ERISA")[1] so that Plaintiffs' Motion to remand is hereby GRANTED. Plaintiffs' two Motions to Stay are MOOT.

\* \* \*

Plaintiffs are former employees of Defendant Caltex Petroleum Corporation ("Caltex"). Plaintiffs relocated from New York to the Dallas area in 1982 when Caltex moved its corporate headquarters from New York to Irving, Texas. As a result of the slumping oil business, Caltex determined in 1988 that it would have to restructure the company and reduce its workforce. The plan was announced to its employees in August 1988.

In September 1988, the company announced its Voluntary Separation Option Program ("VSOP"), which would provide separation benefits to those employees who would voluntarily leave the company. The amount of the severance payment was based upon the number of years of employment. The company also told its employees that a second, involuntary separation program would follow the VSOP. This second program, the Involuntary Separation Assistance Program ("ISAP"), was announced in October 1988. The ISAP provided the same severance pay and other benefits as the VSOP. Each employee was provided a copy of his or her potential benefits under these plans in a sealed envelope. The VSOP and the ISAP clearly state that they are "welfare benefits programs" under ERISA.

Both programs required the employee to sign a General Release by which the employee agreed to release Caltex from any past state or federal claims relating to employment discrimination or the termination. The release did not cover future claims or claims due under Caltex benefit plans. In addition, Caltex agreed in the release that, if Caltex was to enter into a separation agreement with any other employee under the VSOP or ISAP under better financial conditions for that employee, Caltex was to offer those better terms to the employee signing the release as well. The release was to be governed by Texas law.

The Plaintiffs subsequently learned about another group of Caltex employees, referred to as the Narsis plaintiffs, who had left Caltex under the ISAP but had not signed General Releases. The Narsis plaintiffs had filed suit against Caltex and Caltex had confidentially settled with those employees under terms more favorable than those offered under the Plaintiffs' programs. Plaintiffs assert that Caltex never offered those better

---

**1.** 29 U.S.C. §§ 1001, et seq.

terms to them, in violation of the General Release.

Plaintiffs filed this lawsuit in state court in March 1993, seeking certification as a class and asserting state law causes of action for breach of contract, fraud, breach of fiduciary duty, and intentional infliction of emotional distress. On April 13, 1993, Caltex removed the suit to this Court on the basis that the Plaintiffs' claims were preempted by ERISA. Plaintiffs have filed their motion to remand, claiming that this Court lacks jurisdiction over the case and that it was improvidently removed.

\* \* \*

■ As a threshold matter, the Court looks today only at the issues involved in the Motion to Remand, and makes no findings or rulings on the merits of this lawsuit. The matter before the Court is whether the Caltex VSOP and ISAP are ERISA plans so that this Court has original jurisdiction over the suit. Generally, severance plans are covered by ERISA. 29 U.S.C. § 1002(1). The Caltex programs were each explicitly defined as ERISA plans. To call a program an ERISA plan, however, does not necessarily make it so.

■ The Court has carefully examined the relevant decisions from the Supreme Court and the Fifth Circuit concerning severance pay plans. Comparing the Caltex plans to those discussed in the cases, the Court concludes that the Caltex plans are more analogous to plans which the courts have determined not to be ERISA plans than those which were ERISA plans. In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court construed a Maine statute mandating severance pay to employees when a plant closed.

Analyzing the following factors, the Court concluded that no ERISA employee welfare benefit plan was mandated by the statute. There was no systematic commitment to pay benefits upon a plant closing, it was a one-shot event. There was no ongoing program of benefits. There was no administrative scheme required, as there was merely a one-time, lump-sum payment triggered by a single event. There were no periodic demands on company assets that create a need for financial coordination and control. Finally, the Court viewed the company's responsibility as doing little more than writing a check, with no further responsibility. *Id.* at 12, 107 S.Ct. at 2218. In contrast, the Court held that severance pay obligations which necessitate an ongoing administrative scheme would be considered an ERISA plan. *Id.* at 18, 107 S.Ct. at 2221.

In *Wells v. General Motors Corp.*, 881 F.2d 166 (5th Cir.1989), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1959, 109 L.Ed.2d 321 (1990), the Fifth Circuit concluded that a General Motors plan was not an "employee benefit plan" within the meaning of ERISA. There, General Motors workers facing a layoff could elect to receive a one-time lump payment, or a two-year payout, if they stopped working at the plant. There was not an ongoing program requiring continuing administration. Similarly, in *Fontenot v. NL Indus., Inc.*, 953 F.2d 960 (5th Cir.1992), the Fifth Circuit held that a "golden parachute" plan for company executives was not an ERISA plan.

The Fifth Circuit cases which did find that a severance pay arrangement was an ERISA plan are distinguishable. In *Whittemore v. Schlumberger Technology Corp.*, 976 F.2d 922 (5th Cir.1992), the plan in question was not created with a particular closing in mind, and had been in existence for some time before the plaintiff employees had left the company. The Schlumberger plan required an administrative set-up to make payments. In *Harms v. Cavenham Forest Indus., Inc.*, 984 F.2d 686 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993), the company created an enhanced severance pay arrangement when it feared a hostile takeover, and established special benefits payable for life, calculated similarly to retirement. Finally, in *Perdue v. Burger King Corp.*, 7 F.3d 1251 (5th Cir.1993), envisioning a companywide internal reorganization, the company set up a plan of severance benefits for workers losing their jobs at any time during the next three years. This plan applied to two nationwide personnel reorganizations, and required an administrative set-

up to monitor and facilitate the provision of benefits.

The Caltex plans at issue here share more factors in common with the non-ERISA plans. The Caltex reorganization was a one-time occurrence to encourage employees to voluntarily leave their jobs, and terminations would necessarily occur if not enough employees left voluntarily. As seen in the *Wells* case, the fact that employees could choose between a lump-sum payment or payments over several months does not mean that the Caltex plan is necessarily an ERISA plan. The ministerial tasks described by Caltex (determining whether an employee had been terminated for cause, had been with the company for at least one year, etc.) would have been required of the employers in the *Fort Halifax* and *Wells* cases, and dealing with those matters does not in itself create an ERISA plan.

\*    \*    \*

For the reasons discussed above, Plaintiffs' Motion to Remand is GRANTED, and the two Motions to Stay are MOOT. This case is hereby REMANDED to the 298th Judicial District Court of Dallas County, Texas.

SO ORDERED.